## A98A1990. GEORGIA COLOR FARMS, INC. v. K.K.L., LIMITED PARTNERSHIP.
### (507 SE2d 817)

BLACKBURN, Judge.

Georgia Color Farms, Inc. appeals the trial court's grant of summary judgment in favor of plaintiff, K.K.L., Limited Partnership, in the underlying action based upon the breach of a lease between the parties. Georgia Color Farms contends: (1) that K.K.L. failed to give Georgia Color Farms credit for improvements it made to the property; (2) that the trial court granted K.K.L. excessive pre-judgment interest; and (3) that the trial court improperly awarded attorney fees to K.K.L. For the reasons set forth below, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

The record shows that Georgia Color Farms entered into a three-year agreement with K.K.L. on December 15, 1993, to lease property to support a commercial nursery until January 14, 1997. On or around January 26, 1996, Georgia Color Farms vacated the property and failed to pay rent in the amount of $1,750 a month, thereafter owed to K.K.L. On December 16, 1996, K.K.L. rented the property to another tenant at the rate of $1,000 per month.[1]

K.K.L. filed suit against Georgia Color Farms to collect back rent, interest, and attorney fees owed to it pursuant to the lease agreement. Georgia Color Farms counterclaimed, contending (1) that K.K.L. was responsible for reimbursing it for improvements made to the property and (2) that K.K.L. had tortiously interfered with Georgia Color Farms' contract to sell its nursery business.[2] On December 22, 1997, K.K.L. filed a motion for summary judgment on both its claims and Georgia Color Farms' counterclaims. On April 6, 1998, the trial court granted K.K.L.'s motion, awarding it $20,250 for unpaid rent, $1,453.54 for taxes, $2,170.30 for attorney fees, and $8,301.60

---

[1] We note that a landlord in K.K.L.'s position is not required by Georgia law to mitigate his damages by re-renting leased property if a tenant improperly abandons the premises prior to the expiration of the term. However, if the landlord accepts the tenant's surrender or the tenant successfully terminates the lease, the landlord is required to make reasonable efforts to re-lease the premises and mitigate his damages. See Wilburn, Ga. Law of Damages § 28-15.4 (1994).

[2] Georgia Color Farms does not appeal the trial court's summary adjudication of its claim regarding tortious interference.

in pre-judgment interest. Georgia Color Farms appeals from this order.

1. Georgia Color Farms contends that K.K.L. should be required to reimburse it for the cost of improvements it made to the property, the value of which totaled approximately $15,027.41. These improvements include, among other things, electrical wiring, landscaping, fencing, installation of gas lines for heating, and installation of a bathroom.

Paragraph 13 of the lease agreement provides: "Tenant accepts the Premises in [its] present condition and as suited for the uses intended by Tenant. Tenant shall . . . at its expense, maintain in good order and repair the Premises, including the heating (including but not limited to replacement of parts, air handling units and heating units) and other improvements located thereon, except those repairs expressly required to be made by Landlord hereunder. . . . Tenant further agrees to care for the grounds around the building, including paving, the mowing of grass, care of shrubs and general landscaping." Although the lease agreement originally contained a paragraph requiring K.K.L. to make certain repairs to the property during the term of the lease, this paragraph was stricken by agreement of the parties. Thus, to the extent that Georgia Color Farms repaired the property, which it took on an "as-is" basis, it is foreclosed from receiving reimbursement.

Georgia Color Farms nevertheless contends that the changes it made to the property should be considered improvements, not repairs, and that K.K.L. gave it verbal consent to make these improvements. Based on this alleged consent, Georgia Color Farms argues that K.K.L. should be held responsible for the cost of the improvements pursuant to OCGA § 44-7-13.

Although this Code section generally holds a landlord liable for all substantial improvements placed upon property with its consent, it is not applicable here. Paragraph 14 of the lease agreement provides: "Tenant shall not make any alterations, additions, or improvements to the Premises without Landlord's prior *written consent.* Tenant shall promptly remove any alterations, additions, or improvements constructed in violation of this Paragraph 14 upon Landlord's written request. All approved alterations, additions, and improvements will be accomplished in a good and workmanlike manner, in conformity with all applicable laws and regulations, and by a contractor approved by Landlord, free of any liens or encumbrances. Landlord may require Tenant to remove any alterations, additions or improvements (whether or not made with Landlord's consent) at the termination of this Lease and to restore the Premises to its prior condition, all at Tenant's expense. All alterations, additions and improvements which Landlord has not required Tenant to remove

shall become Landlord's property and shall be surrendered to Landlord upon the termination of this Lease." (Emphasis supplied.) Therefore, on the face of the lease, Georgia Color Farms is held responsible for improvements made to the property without prior written consent, which it is undisputed that Georgia Color Farms lacked.

Georgia Color Farms further argues that, despite its lack of prior written consent to make improvements, the parties, by mutual agreement, departed from the express terms of the lease pursuant to OCGA § 13-4-4. This Code section provides: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice."

"While parties may agree to depart from the terms of a contract (see OCGA § 13-4-4; *Smith v. General Finance Corp.*, 243 Ga. 500 (255 SE2d 14)) to support such a departure, there must be some evidence that an agreement to do so had been reached." *Cloud v. Ga. Central Credit Union*, 214 Ga. App. 594, 596 (1) (448 SE2d 913) (1994). There is no evidence supporting Georgia Color Farms' claim that a mutual departure occurred whereby K.K.L. agreed to reimburse it for improvements made to the property. In support of its argument, Georgia Color Farms points to the testimony of Elaine Gray, its secretary/treasurer. In her affidavit, Gray states that K.K.L., through its agents, was apprised of the improvements made by Georgia Color Farms; however, she does not state that K.K.L.'s agents explicitly approved of such improvements in any manner, whether verbal or written. The simple fact that Georgia Color Farms may have informed agents of K.K.L. about improvements does not support its claim that the parties mutually intended to deviate from the terms of the contract. Georgia Color Farms could not shift its contractual liabilities for improvements to the property simply by informing K.K.L. that the improvements would be made. The lease placed the onus of receiving approval for improvements on Georgia Color Farms, and there is no evidence that such approval was ever received. Accordingly, Georgia Color Farms was not entitled to reimbursement, and we affirm the trial court's decision on this matter.

2. Georgia Color Farms contends that the trial court erred in computing the amount of pre-judgment interest owed by it, arguing that the amount determined by the trial court was excessive.

The trial court found that Georgia Color Farms owed K.K.L. $20,250 in unpaid rent and $1,453.54 in unpaid taxes, totaling $21,703.54. Pursuant to OCGA § 7-4-16, the trial court awarded pre-judgment interest to K.K.L. on the unpaid principal balance, at the

statutory rate of 18 percent per year from January 27, 1996. Although Georgia Color Farms claims that the amount of interest awarded was excessive, it bases its calculations solely on the amount of unpaid rent, thereby skewing its figures. Starting with the principal balance of $21,703.54, we find that pre-judgment interest of $8,301.60 was not excessive.

3. Georgia Color Farms contends that there was an insufficient basis for the trial court's award of $2,170.30 in attorney fees to K.K.L.

Paragraph 29 of the lease agreement provides: "In the event that any action or proceeding is brought to enforce any term, covenant or condition of this Lease on the part of Landlord or Tenant, the prevailing party in such litigation shall be entitled to recover reasonable attorney[ ] fees to be fixed by the court in such action or proceeding."

OCGA § 13-1-11 provides: "Obligations to pay attorney[ ] fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity." "In *Burgess v. Clermont Properties*, 141 Ga. App. 112 (2) (232 SE2d 627) (1977), this Court found 'no reason why a lease may not be an "evidence of indebtedness" ' within the meaning of OCGA § 13-1-11." *Holmes v. Bogino*, 219 Ga. App. 858, 859 (2) (467 SE2d 197) (1996). Therefore, OCGA § 13-1-11 is applicable to the lease agreement between K.K.L. and Georgia Color Farms.

OCGA § 13-1-11 (a) (2) provides: "If such note or other evidence of indebtedness provides for the payment of reasonable attorney[ ] fees without specifying any specific percent [of the principal and interest owing thereon], such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." The trial court found that Georgia Color Farms owed K.K.L. $21,703.54 in principal and interest. Applying OCGA § 13-1-11 (a) (2) to this sum, the appropriate amount of reasonable attorney fees would be $2,195.35, approximately $25 more than the trial court awarded. As such, we reject this enumeration.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 5, 1998 —
RECONSIDERATION DENIED OCTOBER 26, 1998 — 

*England & McKnight, Robert H. McKnight, Jr.*, for appellant.

*Stokes, Lazarus & Carmichael, Marion B. Stokes, Daniel E. Ellis,* for appellee.