## A98A2060. CLARK v. BLUE CIRCLE, INC.
### (514 SE2d 473)

RUFFIN, Judge.

Brian Clark sued Blue Circle, Inc., d/b/a Blue Circle Williams (BCW), for injuries he sustained in a motorcycle crash. Clark died on March 27, 1998, and Katherine Clark, as administratrix of his estate, has been substituted as plaintiff.[1] The trial court granted BCW's motion for summary judgment, and plaintiff appeals. Because genuine issues of material fact remain as to BCW's liability, we reverse.

1. As an initial matter, we note that plaintiff has failed to comply with Court of Appeals Rules 22 (a) and 27 (c) (1). Rule 22 (a) requires an appellant to file a separate enumeration of errors, which plaintiff has not done. Although plaintiff enumerates four errors in her brief, her argument section contains only two listed arguments which do not follow the order of her enumerations. See Court of Appeals Rule 27 (c) (1).

> Rule 27 (c) (1) is more than a mere formality. It is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the rule, [plaintiff] has hindered the Court's review of [her] assertions and has

---

[1] There is no indication in the record that Brian Clark's death resulted from the September 1995 accident. All references hereinafter to "Clark" are to Brian Clark.

risked the possibility that certain enumerations will not be addressed. Accordingly, to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations. Pursuant to Court of Appeals Rule 27 (c) (2), however, all other enumerations will be treated as abandoned.

*John Crane, Inc. v. Wommack*, 227 Ga. App. 538 (1) (489 SE2d 527) (1997).

2. "On appeals from grants of summary judgment, it is this court's function to examine the record and determine whether the allegations of the pleadings have been pierced so that no genuine issue of material fact remains. Our review is de novo." (Citations and punctuation omitted.) *Bandy v. Mills*, 216 Ga. App. 407 (454 SE2d 610) (1995).

Viewed in the light most favorable to plaintiff, the nonmoving party, the record shows as follows. On September 18, 1995, Clark was riding his motorcycle eastbound on Glenwood Avenue at approximately 25-30 mph. As he was rounding a curve, Clark began reducing his speed for a traffic light, when he hit a patch of gravel approximately ten to fifteen feet west of the entrance to BCW's plant and slid into its metal, chain-link fence. Clark testified that "a couple of times" he had seen gravel fall off BCW's dump trucks on this street.

Officer Anthony Jackson testified that when he arrived at the scene, he found Clark "laying up" under his bike "right in front of" BCW. According to Jackson, Clark said that he lost control of his bike in front of BCW on "a lot of gravel and sand in the roadway." Jackson noticed only "normal road debris" in the roadway, but saw a high concentration of sand and gravel at BCW's entrance.

John Wayne Curtis, a passenger in a car traveling approximately 100 yards behind Clark's motorcycle, testified that he saw Clark go around a corner, hit gravel and lose control of his bike. After the accident, Curtis saw gravel on the roadway, but he could not remember how much. Curtis, who lives up the street from the plant, testified that "every other time" he has driven by the plant, he has seen gravel approximately 50 feet in each direction from the plant's entrance and that he has seen gravel, sand and "other materials" falling off trucks as they enter and exit the plant.

Melissa Atkinson, also a passenger in the car traveling behind Clark, testified that she believed gravel in the road directly in front of the plant caused Clark's accident. Atkinson, like Clark and Curtis, had seen dump trucks lose sand and gravel on Glenwood Avenue before the accident.

Several BCW employees gave contradictory testimony regarding

the presence of debris in front of the Glenwood Avenue plant. In an affidavit, BCW's multi-plant manager, Harold Kee, stated that BCW operates a "dry batch concrete plant" which means that the concrete trucks are rinsed off prior to the trucks leaving the plant. BCW uses concrete mixer trucks to carry mixed concrete, not dump trucks or other types of trucks that carry loose gravel, rock or sand. Kee stated that the concrete trucks at this plant "are not allowed to, and do not, drive on Glenwood Avenue" west of the driveway where plaintiff claims he lost control of his motorcycle.

Edward Collins, a BCW truck driver, also testified that concrete mixers are not allowed to drive on Glenwood Avenue in the direction from which Clark was traveling. According to Collins, there could not have been any spillage at the plant's entrance, and if there was any debris on the roadway, it would have been near the curb, and not in a driving lane. Another driver, Harrison Leonard, testified that he has never observed any gravel or debris near the plant's entrance. According to Leonard, other companies' trucks bring rocks and gravel to the plant.

Bill Owen, BCW's maintenance supervisor, testified that as the concrete trucks leave the plant, they can "spill" for various reasons. Owen stated that it is necessary for BCW to clean the street after a concrete spill because it "gets on the cars" and "it'll make your tires spin." Owen explained that the mixed concrete contains sand and rock.

Johnny Calhoun, a BCW driver, arrived at the scene after Clark's accident. Calhoun testified that he did not see any dirt or gravel on the road in front of the plant's driveway, but explained that he was not "really looking for that" since he was concerned about Clark. According to Calhoun, if a driver sees that something has spilled from his truck as he leaves the plant, he will call someone to pick it up. However, Calhoun "wouldn't be surprised to find rocks and gravel" in the street because of the number of BCW and other companies' trucks that go in and out of the plant on a daily basis.

Gregory Goodman, another BCW truck driver, saw Clark after the accident. Although Goodman had seen instances where a mixer leaving the plant will spill concrete onto the ground, he could not recall whether there had been any spillage on the date of Clark's accident. Yet another BCW driver, Phillip Richardson, testified that he has seen debris, gravel, and dried concrete at the plant's entrance on occasion. Patrick McClellan, a former BCW driver, testified that there was sand and gravel in front of the plant and "further up, further down" the road every day. According to McClellan, it was "normal" to have "sand, gravel, mud, dirt, water, everything" where a concrete plant is concerned.

On appeal, plaintiff contends that the trial court erred in grant-

ing summary judgment to BCW because there was evidence from which a jury could find that Clark's accident was caused by sand, gravel and other debris that BCW negligently spilled in front of its plant. We agree.

> An owner of property abutting upon a street or highway is not, by virtue of being such [an] owner, liable for defects in the street or highway. But this rule has no application where the owner of abutting property creates a defect in a street or highway or a nuisance therein. In the latter event he is liable, not because he owns the abutting property, but because he creates or maintains the thing from which injury results.

*Ga. R. &c. Co. v. Tompkins*, 138 Ga. 596, 599 (2) (75 SE 664) (1912).

BCW contends that it is entitled to summary judgment as a matter of law because (1) its trucks do not travel west of its entrance where plaintiff alleges loose sand and gravel caused Clark to lose control of his motorcycle; (2) there is no evidence that the loose sand or gravel that caused Clark to lose control came from its plant or one of its trucks; and (3) loose sand or gravel on a public street is not a dangerous or defective condition as a matter of law. These contentions are without merit.

We address BCW's first two contentions together. BCW places great significance on the location where Clark lost control of his motorcycle, contending that its trucks do not travel west of its driveway. However, several of BCW's own witnesses testified that regardless of where the trucks actually traveled, sand, gravel and other debris from its trucks could be found in both directions from the plant's entrance. Clark and the two eyewitnesses to his accident each testified that they had seen BCW trucks spill gravel and other debris on Glenwood Avenue before this incident. Thus, there is some evidence to support plaintiff's claim.

We also cannot say that as a matter of law any debris negligently spilled in the road by other companies' trucks in front of the plant relieves BCW of any liability to Clark. In *Miller v. APAC-Ga.*, 197 Ga. App. 801 (399 SE2d 534) (1990) (physical precedent only), the plaintiff lost control of her car after she hit some loose gravel on the roadway and slid down an embankment at a construction site. Defendant argued that it could not be deemed negligent with regard to the loose gravel because it did not haul the gravel to its work site. Id. at 803 (2). In concluding that the defendant was not entitled to summary judgment, this Court held that it could be "held liable if it negligently permitted the gravel to remain on the roadway." Id. Likewise, if trucks coming to and from BCW's plant on a daily basis spill sand

and gravel on the roadway abutting the plant, rendering it dangerous to passers-by, a jury could find that BCW was negligent in allowing the debris to remain in the roadway.

At his deposition, Clark testified that he hit gravel ten to fifteen feet west of the plant's entrance, and not directly in front of the plant as he later stated in his affidavit. We fail to see how any inconsistencies in Clark's testimony regarding the location of his accident are material. Whether he lost control of his motorcycle directly in front of the plant or ten to fifteen feet west of it, there was evidence that gravel caused his accident and that the gravel could have come from BCW's trucks or other companies' trucks which regularly used BCW's driveway. Thus, the fact that Clark said one thing at his deposition and another in his affidavit goes more to his credibility than to the issue of whether BCW negligently spilled gravel in the roadway. The weight given to any inconsistencies in a party's testimony which may affect his credibility is exactly the sort of issue for a jury's resolution. See *Norris v. State*, 220 Ga. App. 87, 88 (1) (469 SE2d 214) (1996) (" ' "[t]he weight and credibility of witnesses are questions for the triers of fact" ' ").

Nevertheless, even if we assume for summary judgment purposes that BCW was responsible only for the sand and gravel which had accumulated *directly* in front of its plant, and we construe Clark's affidavit testimony against him, there is independent evidence from which a jury could find that Clark lost control of his bike at the plant's entrance. "[T]he opposing party is entitled to judgment only where the favorable portion of the party's self-contradictory testimony is the *only* evidence of his right to recover or of his defense." (Punctuation omitted.) *Korey v. BellSouth Telecommunications*, 269 Ga. 108, 109 (498 SE2d 519) (1998). "[T]he opposing party is not entitled to judgment in its favor where there is evidence other than the favorable portion of the equivocator's self-contradictory testimony that supports the equivocator's position." Id. An eyewitness testified that Clark lost control of his bike "in front" of the plant. Shortly after the accident, Clark himself told the investigating officer that he lost control on sand and gravel "in front" of the plant. We also note that in marking several photographs of the scene supplied by the defense at his deposition, Clark stated that he could not be completely sure where he lost control of his bike because "it was a rough road" and because he did not actually see any gravel until he started sliding and was "on top of it."

Lastly, we turn to BCW's argument that loose sand or gravel in a roadway is not a dangerous condition as a matter of law. BCW cites *City of East Point v. Mason*, 86 Ga. App. 832, 834 (3) (72 SE2d 787) (1952) for the proposition that to require it to keep the street in front of it "free from loose gravel is to require the impossible from a stand-

point of reasonable possibility both from a manpower and a financial point of view." However, *Mason* dealt with a far different situation than the one at hand. In *Mason*, we explained that an abutting property owner is not liable for damages for "the accumulation of a *small* amount of gravel on a sidewalk" where the defendant did not cause that gravel "to get upon the sidewalk" and the gravel got on the sidewalk "in a natural and usual way," such as being washed from a driveway or carried on by foot. (Emphasis supplied.) Id. at 833-834 (1)-(2). Here, the investigating officer saw a "high concentration" of sand and gravel at the plant's entrance. In addition, none of BCW's employees testified that any debris on the roadway got there "in a natural and usual way." To the contrary, several employees testified that debris was a common sight in front of the plant where numerous trucks hauling both liquid concrete as well as sand and gravel regularly came and went on a daily basis.

In concluding that there remain genuine issues of material fact to be tried in this case, we note that

> [a]s a general proposition issues of negligence . . . are not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner. The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable.

(Punctuation omitted.) *Miller*, supra at 802 (1). Accordingly, because there is evidence from which a jury could find that (1) BCW negligently spilled sand and gravel on the street and/or (2) BCW negligently left spillage on the street from other companies' trucks using its entrance, causing Clark to lose control of his motorcycle, we conclude that the trial court erred in granting summary judgment to BCW.

3. Having found that issues of material fact remain to be tried, we need not address plaintiff's remaining arguments.

*Judgment reversed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 15, 1999 —

*William N. Robbins*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Wade K. Copeland, Daniel J. Huff*, for appellee.