## A00A1895. CHANEY et al. v. BURDETT et al.
(548 SE2d 407)

RUFFIN, Judge.

Lawrence Burdett and Charles Chaney were equal partners in BMW Partners. After Charles Chaney died, his wife, Bonnie Chaney, individually and as the executrix of her husband's estate, brought suit against Burdett and BMW Partners, seeking to compel liquidation of partnership assets, to enforce a buy-sell agreement contained in the Partnership Agreement, and to recover damages for Burdett's alleged breach of a fiduciary duty. The parties filed cross-motions for partial summary judgment. The trial court denied Chaney's motion, but granted Burdett's motion with respect to several counts of Chaney's complaint, and Chaney appeals. For reasons that follow, we affirm.

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.[1] In reviewing a grant of summary judgment, we conduct a de novo review, and we construe the evidence and all inferences in favor of the nonmovant.[2]

In 1982, Burdett and Charles Chaney incorporated a car repair business. The two men subsequently purchased property and built the facility out of which they operated their car repair business. Burdett and Chaney then formed BMW Partners and transferred ownership of the facility to the partnership. Initially, the Partnership Agreement contained a provision that, upon the death of a partner, the "Partnership shall be converted to a limited partnership and the . . . personal representative . . . of a deceased Partner . . . shall be admitted to the Partnership as a Limited Partner." The agreement was subsequently amended to delete this provision in its entirety, leaving the agreement silent as to the effect a partner's death would have on the partnership.

In 1987, the partnership entered a lease agreement with the corporation in which the corporation agreed to lease the property for $8,000 per month. The lease provided that it would "automatically renew for three (3) successive terms of five (5) years" absent written notice to the contrary. According to Burdett, however, the partners "did not follow the lease terms exactly" and would accept as rent whatever amount the corporation could afford. Prior to Charles Chaney's death, the corporation began paying the partnership $9,000 per month in rent.

Charles Chaney was diagnosed with terminal cancer. Prior to his death, he provided his wife a handwritten "memorandum," which

---

[1] See *Duffy v. The Landings Assn.*, 245 Ga. App. 104 (536 SE2d 758) (2000).
[2] Id.

purported to explain "legal and financial matters associated with his estate." The memorandum stated that the "business" would go to Burdett, but not the "property." The memorandum also stated that $900,000 would go to Bonnie Chaney for the "business." Finally, the memorandum indicated that Bonnie Chaney would continue to receive $4,500 each month as her share of the rent from the property owned by BMW Partners.

On April 15, 1998, Charles Chaney died. Burdett elected to continue the business of the partnership, and he sought to purchase the estate's interest in the partnership. Burdett met with Bonnie Chaney's attorney, and according to Burdett, they agreed that the corporation would continue to pay Chaney $4,500 per month in rent until Chaney's attorney obtained an appraisal to establish the fair market rental value of the property. Upon ascertaining the fair market value, the rent would be adjusted retroactive to the month following Charles Chaney's death.

Bonnie Chaney disagreed with the decision to adjust the rent based upon an appraisal, and she refused to accept less than the $4,500 that she had been receiving. Evidently, her attorney did not have the property appraised. In December 1998, Burdett stopped paying rent to Chaney in an attempt to get Chaney's attorney "to do what had already been agreed to [and] set the rent at fair market value or agree on a price at which the Estate's interest could be purchased."

In February 1999, Chaney, through her attorney, wrote Burdett, claiming to invoke the buy-sell agreement contained within the Partnership Agreement and agreeing to accept $438,500 for her share of the partnership. Burdett, however, did not believe that Chaney had a right to invoke the buy-sell agreement. In a letter dated March 3, 1999, Burdett offered to pay Chaney $300,000 for the estate's interest in the partnership, which was based upon an appraisal and an estimate of the value of the equipment owned by the partnership. The letter also informed Chaney that, based upon the appraisal, the fair market value of the rent was $4,500 as opposed to $9,000, the corporation had overpaid the partnership $80,000, and the rent was being "adjusted" retroactively to January 1, 1997, to recoup the overpayment.

Upon receiving the March 3 letter, Chaney instituted this action. In Count 1 of her complaint, she sought judicial liquidation of the partnership's assets, a full accounting of partnership assets, and payment of her share of the assets. In Count 2, Chaney asserted that she was authorized to exercise the buy-sell provision in the Partnership Agreement, and she requested a court order compelling Burdett to sell his interest to her in accordance with that agreement. In Count 3, Chaney alleged that, in unilaterally adjusting the rent, Burdett

breached his fiduciary duty owed to her, as the executrix of her husband's estate.

Chaney moved for partial summary judgment on Count 1, seeking (1) a judicial determination that she had the right to compel liquidation of the assets of the partnership; (2) a judicial determination that she had the right to a judicially supervised winding up of partnership business, including an accounting of partnership assets; (3) a finding that an enforceable lease is a partnership asset; and (4) a finding that Burdett's unilateral reduction of rent was "null and void." Burdett filed a cross-motion for summary judgment, asking the court to examine the record and "enter an order specifying the facts that are without substantial controversy and direct further proceedings in the action as are just."

In its order, the trial court found that Chaney did not have the right to compel liquidation of the partnership's assets, and it denied her motion. With respect to the accounting and Chaney's request for payment of her share of the partnership's assets, the court found that genuine issues of fact remained as to what Chaney was owed. With respect to Chaney's attempt to assert partnership rights, the court determined that Chaney, as the legal representative of her husband's estate, stood as an ordinary creditor to the partnership, rather than a partner. As such, the court held that Chaney did not have the right either to exercise the buy-sell agreement or to assert a breach of fiduciary duty. Thus, the trial court granted summary judgment on Counts 2 and 3 of Chaney's complaint as well as Count 1 on the issue of judicial liquidation.

1. In several enumerations of error, Chaney contends that the trial court erred in denying her motion for summary judgment.[3] Chaney argues that she has the right to compel judicial liquidation of partnership assets. Also, she asserts that Burdett, as the sole remaining partner, does not retain the right to continue the business of the partnership. Chaney, however, misconstrues the statutes setting forth the rights and obligations of the parties in a situation such as this.

Upon Charles Chaney's death, BMW Partners was dissolved by operation of law.[4] Following dissolution, Bonnie Chaney contends that OCGA § 14-8-38 (a) gives her the right to liquidate partnership

---

[3] In five enumerations of error, Chaney asserted that the trial court erred in its ruling with respect to Count 1 of her complaint. She addressed the five enumerations in one argument in her brief. In so doing, she has disregarded Court of Appeals Rule 27 (c) (1). Litigants who disregard this Court's rules do so at their own peril. See *Clark v. Blue Circle*, 237 Ga. App. 1 (1) (514 SE2d 473) (1999). However, to the extent that we can discern Chaney's arguments, we will address them. Id.

[4] See OCGA § 14-8-31 (a) (5).

assets. This Code section provides, in pertinent part,

> [u]nless otherwise agreed by the partners in the partnership agreement, at the time of the transaction, or at any other time, including, but not limited to, an agreement to continue the business of the partnership, when dissolution is caused in any way, other than wrongfully either in contravention of the partnership agreement or as a result of other wrongful conduct of a partner, any partner, or the legal representative of the estate of a deceased partner, as against his copartners and all·persons claiming through them in respect of their interests in the partnership, may have the partnership property applied to discharge its liabilities and the surplus applied to pay in cash or its equivalent the net amount owing to the respective partners.

Contrary to Chaney's contention, this provision does not give her a general right to liquidate partnership assets.

Where a statute's language is plain and does not lead to any absurd or impracticable consequences, we simply construe it according to its terms and conduct no further inquiry.[5] Moreover, "we will not construe a statute so as to render any portion of it meaningless, and we must reconcile, if possible, any potential conflicts between different sections in light of the entire statutory scheme and the legislative intent."[6]

OCGA § 14-8-38, by its express terms, gives the legal representative of a deceased partner the right to satisfy partnership obligations using partnership assets *unless* the partners agree to continue the business of the partnership. This Code section does *not*, however, give the legal representative the same rights as a partner. Thus, following the death of Charles Chaney, Burdett was the only partner, and he chose to continue the business of the partnership.

Chaney argues that OCGA § 14-8-38 requires that all original partners agree to continue the business if the business is to be continued. We find this argument unavailing. Where, as here, one partner has died, it is impossible for all original partners to agree to continue the business.

Moreover, Chaney's view that this statute grants a general right to nonpartners to liquidate partnership assets is inconsistent with the statutory scheme in its entirety, which clearly permits the remaining partners to continue the business of the partnership fol-

---

[5] *Hayden v. Sigari*, 220 Ga. App. 6, 8 (1) (467 SE2d 590) (1996).
[6] *Paulsen Street Investors v. EBCO Gen. Agencies*, 237 Ga. App. 116, 119 (1) (514 SE2d 904) (1999).

lowing the death of a partner. Pursuant to OCGA § 14-8-41 (a),

> [w]hen any partner withdraws, is expelled, or dies and the business of the dissolved partnership is continued by one or more of the partners, either alone or with others, without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the person or partnership continuing the business.

OCGA § 14-8-42, in turn, provides that

> [w]hen any partner withdraws or dies, and the business is continued under any of the conditions set forth in subsection (a) of Code Section 14-8-41 . . . without any settlement of accounts as between the withdrawn partner or the legal representative of the estate of a deceased partner and the persons or partnership continuing the business, unless otherwise agreed . . . [t]he withdrawn partner or legal representative of the estate of the deceased partner shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership.

Reading these Code provisions together, it is evident the legislature intended that, following the dissolution of a partnership due to the death of a partner, the remaining partner or partners can agree to continue the business of the partnership. If the business is continued, the legal representative of the deceased partner stands as a general creditor to the dissolved partnership. Thus, the trial court correctly concluded that Chaney, as a general creditor, had no right to compel liquidation of partnership assets.[7]

2. Chaney alleges that the trial court erred in denying her summary judgment on her right to an accounting of partnership assets. Chaney is correct that, as the legal representative of her husband's estate, she has the right to an accounting of her husband's interest in the partnership.[8] Here, however, the trial court expressly ruled that issues of fact remained as to what Chaney was owed. Accordingly, the trial court did not rule *against* Chaney on this issue. In her complaint, Chaney demanded an "audit by an independent accountant." To the extent that she bases her claim of error on the trial court's fail-

---

[7] As it is not necessary to this appeal, we do not address a court's authority to compel liquidation of partnership assets if such liquidation is necessary to wind up the prior partnership's business.

[8] See OCGA § 14-8-43.

ure to appoint such auditor, we note that "[t]he appointment of an auditor is within the discretion of the trial court."[9] We find no abuse of discretion here.[10]

3. Chaney argues that the trial court erred in failing to grant her summary judgment on the "Enforceability of the Five-Year Extension of the Lease Agreement." Burdett, on the other hand, asserts that the corporation and partnership departed from the terms of the lease, and "[t]he issue of whether there had been a joint departure from the contract terms is ordinarily a question for the jury."[11] Therefore, the trial court did not err in failing to grant summary judgment on this issue.

4. Chaney contends that the trial court erred in granting Burdett summary judgment on Count 2 of her complaint, in which she sought to enforce the Partnership Agreement. Specifically, she alleges that Burdett and her husband entered into a "quasi-new agreement" in which she would succeed to her husband's interest in the partnership upon his death. According to Chaney, her husband's memorandum, combined with Burdett's actions in negotiating with her regarding a reduction in rent and in failing to wind up partnership business, creates a factual issue "as to the existence of an agreement to continue the partnership." Chaney asserts that she has the rights of a partner under this quasi-new agreement.

Chaney's reasoning is flawed. As an initial matter, we note that Burdett could not agree to continue the original partnership as it was dissolved, by operation of law, upon Charles Chaney's death.[12] Additionally, in his affidavit, Burdett stated that he never agreed to accept Bonnie Chaney as a partner in the business. Indeed, the Partnership Agreement was specifically amended so that the legal representative of a deceased partner would *not* become a partner in the continued business. And none of Burdett's actions in dealing with Chaney suggests that he considered her a partner.[13]

Although parties certainly may agree to depart from the terms of an agreement, to survive summary judgment, "there must be some evidence that an agreement to do so had been reached."[14] As there is no evidence that Burdett intended to enter a quasi-new agreement,

---

[9] *Parmar v. Khera*, 215 Ga. App. 71 (2) (449 SE2d 894) (1994).

[10] See id.

[11] *First Union Nat. Bank of Ga. v. Davies-Elliott, Inc.*, 215 Ga. App. 498, 504 (2) (452 SE2d 132) (1994).

[12] See OCGA § 14-8-31 (a) (5).

[13] We fail to see how the "memorandum" written by Chaney's husband establishes that Burdett entered into a quasi-new agreement to include Bonnie Chaney in the partnership. The "memorandum" contains no such statement, and Chaney makes no cogent argument as to how the "memorandum" implies such agreement.

[14] (Punctuation omitted.) *Ga. Color Farms v. K.K.L., Ltd. Partnership*, 234 Ga. App. 849, 851 (1) (507 SE2d 817) (1998).

the trial court did not err in granting summary judgment on this issue.[15]

It follows that the trial court correctly concluded that Chaney, as a nonpartner, had no right to invoke the buy-sell agreement contained in the Partnership Agreement. A partnership agreement is a contract,[16] and Chaney, as a third party, has no rights under the contract.[17]

5. Chaney asserts that the trial court erred in granting Burdett summary judgment on her claim that, in unilaterally adjusting the rent, Burdett breached a fiduciary duty owed her as the executrix of her husband's estate. Again, we disagree.

We will not presume that a confidential and fiduciary relationship exists. The burden rests on Chaney, as the party asserting such relationship, to affirmatively show that one does exist.[18] Chaney makes no attempt to establish why a confidential relationship exists, but merely argues that, as the legal representative of her husband's estate, she is owed the same duty that would be owed to her husband. It is true that "partners owe a duty to act in the utmost good faith with regard to each other."[19] For reasons discussed above, however, Chaney, who stands as an ordinary creditor to the partnership, is not entitled to be treated as a partner.[20]

6. Finally, Chaney maintains that the trial court erred in finding that Burdett stated that "he and Mr. Chaney made an oral agreement to pay the Partnership more or less [for renting the property] depending on how much the Corporation could afford." We note, however, that Burdett did, in fact, state in his affidavit that he and Charles Chaney had an agreement that the corporation would pay what it could. Furthermore, the trial court did not rule on the validity of that oral agreement. It concluded instead that issues of fact remain as to what rent should have been paid.

Burdett's statement in his affidavit creates an issue of fact as to whether he and Charles Chaney mutually departed from the terms of

---

[15] See id.

[16] See *Howard v. Hammond*, 216 Ga. App. 703, 706 (2) (455 SE2d 390) (1995).

[17] Here, there is no evidence that Chaney was a third-party beneficiary to the Partnership Agreement. See *Rowe v. Akin & Flanders, Inc.*, 240 Ga. App. 766, 768 (1) (525 SE2d 123) (1999).

[18] See *Harish v. Raj*, 222 Ga. App. 248, 250 (1) (474 SE2d 624) (1996); see also *Bowen v. Hunter, Maclean, Exley &c.*, 241 Ga. App. 204, 207 (2) (525 SE2d 744) (1999) (physical precedent only).

[19] (Punctuation omitted.) *Howard*, supra at 706.

[20] On appeal, Chaney also argues that Burdett breached a fiduciary duty owed to the partnership. Pretermitting whether she has standing to raise this issue, she did not assert such breach in her complaint, and she does not appear to have raised this argument below. This Court will not consider arguments raised for the first time on appeal. See *Leal v. Hobbs*, 245 Ga. App. 443, 447 (2) (b) (538 SE2d 89) (2000).

the lease. Contrary to Bonnie Chaney's contention on appeal, the trial court was not permitted to ignore Burdett's statement for the purpose of granting her motion for summary judgment.[21]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 20, 2001 — 

*James C. Gaulden, Jr.,* for appellants.
*Perrie, Buker, Jones & Morton, J. William Haley,* for appellees.

---

[21] See *McNeal v. Days Inn of America*, 230 Ga. App. 786, 788 (498 SE2d 294) (1998) (if evidence creates a jury issue, trial court not permitted to ignore such evidence on motion for summary judgment).