A01A0816, A01A0817. INSURANCE INDUSTRY CONSULTANTS, INC. v. ESSEX INVESTMENTS, INC.; and vice versa.
(549 SE2d 788)

BARNES, Judge.

This appeal concerns a renewal clause in a commercial lease. In 1995, Insurance Industry Consultants, Inc. ("IIC"), as tenant, executed a five-year lease of an office in the Triangle Building in northwest Atlanta, that was later managed by Essex Investments, Inc. ("ESSEX"). By its terms, the lease would expire on October 31, 2000. The renewal provision states:

Lessee shall have two 3-year options to renew the lease by giving four (4) months prior written notice. Lessee will receive new building standard carpet and paint when the

renewal option is taken. The rental rate for the renewal term shall be the fair market rental with fair market escalations. Fair market rental rate and fair market escalations being that rate and escalation found within comparable premises in comparable properties within the Northwest office submarket, taking into account any concessions being offered at that time.

The lease also contains an entire agreement clause requiring that all modifications to the lease be in writing signed by all parties.

On October 6, 1999, representatives of IIC and ESSEX met and discussed, among other subjects, an extension of the lease. During the meeting, ESSEX indicated its interest in keeping IIC as a tenant. On October 20, 1999, the parties again discussed extending the lease, and IIC expressed its intention to amend the current lease. ESSEX would give them "initial lease numbers for 3 and 5 year leases" by November 10, 1999, and IIC understood that because there was not a big hurry to sign the renewal, a tight timetable was not required. IIC reviewed the lease in preparation for the meetings with ESSEX but never provided written notice that it had decided to exercise its option to renew the lease.

On November 4, 1999, ESSEX sent a letter by fax to IIC stating, "I have prepared the following renewal proposal for IIC's office space located in the Triangle Building." Among other details, the proposal included rental rates and monthly rentals for a three-year extension. The letter concluded: "If you have any questions, please do not hesitate to call." When IIC did not promptly respond to this letter, ESSEX followed up with telephone calls to confirm that IIC had received the letter. Ultimately in December, ESSEX confirmed that IIC had received the letter, and IIC stated that it would get back to ESSEX about it. IIC, however, never responded to the letter.

IIC admits that it never gave written notice of its intention to exercise its option to renew the lease and never told ESSEX orally that it intended to do so. IIC never mentioned renewal of the lease from December 1999 to August 2000. Further, even at the meeting on October 6, 1999, IIC never told ESSEX that it was exercising its option to renew the contract. Although IIC believed that its intention to renew was plain from the meeting on October 20, 1999, IIC never accepted the terms of the proposal sent on November 4, 1999. The trial court specifically found that IIC did not respond to any communications from ESSEX regarding the November 4, 1999 renewal proposal.

Finally on August 16, 2000, ESSEX sent two letters by fax. One stated that ESSEX was not renewing the lease with IIC, and the other stated that ESSEX had received IIC's telephone message at

10:50 that morning, that it would renew the lease, and that it would send the papers the next day. The second letter also advised IIC that ESSEX "will not renew the lease with Insurance Industry Consultants, Inc."

After IIC stated that it would refuse to vacate the premises at the end of the lease, ESSEX filed this action seeking a declaration of its rights and obligations under the lease. Later, IIC filed a counterclaim also seeking declaratory relief that the prior written documents between the parties were sufficient to constitute written notice of the extension or, in the alternative, that the court declare that ESSEX either waived the written notice provision or was estopped from asserting it.

In a bench brief, filed in court before the trial, ESSEX contended the renewal provision in the lease was too indefinite to be enforced. It further contended that even if the renewal provision was enforceable, IIC had not exercised the option to renew properly and that an oral extension to renew a lease for three years was barred by the Statute of Frauds.

After the bench trial, the trial court issued a declaratory judgment in favor of ESSEX because it found the renewal provision was legally unenforceable. Before doing so, however, the trial court, relying on *Storey v. Austin*, 221 Ga. 692 (146 SE2d 728) (1966), concluded as a matter of law that "IIC had sufficiently exercised its option by clearly indicating an intent to renew the lease well before the requisite four (4) month notice period." The trial court denied IIC's counterclaim for a declaratory judgment and denied both parties' requests for award of attorney fees, expenses, and costs.

IIC has appealed that ruling, contending that the trial court erred by holding that the objective market rate renewal provision of the lease was unenforceable and also erred by holding that the Statute of Frauds applied to this lease provision. ESSEX has filed a cross-appeal in which it asserts that the trial court erred by denying its claim for attorney fees and expenses of litigation. ESSEX, however, has not challenged the trial court's ruling that IIC effectively exercised the renewal option.

1. Under OCGA § 9-11-52 (a), a trial court's findings in nonjury trials "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Because the clearly erroneous test is in effect the same standard as the any evidence rule, appellate courts will not disturb factfindings of a trial court if there is any evidence to sustain them. *Kimbrell v. Effingham Bd. of Tax Assessors*, 191 Ga. App. 544, 545-546 (382 SE2d 388) (1989). The trial court's interpretation and application of the law to those findings, however, are subject to de

novo review. See *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

## Case No. A01A0816

2. When no dispute of fact is involved, the construction of a plain and definite lease, if needed, is a matter of law for the court, and when construing lease provisions concerning renewals, the tenant is given the benefit of any uncertainty. *Thornton v. Ellis*, 184 Ga. App. 884-885 (1) (363 SE2d 584) (1987). Since the words in this lease are plain and obvious, however, they must be given their literal meaning. *United States Fire Ins. Co. v. Capital Ford &c.*, 257 Ga. 77, 79 (355 SE2d 428) (1987).

Although the parties have at various times referred to "renewal" and "extension" of the lease, the words used are not important.

> That the parties used the term "renewal" when referring to the stipulation is not controlling. Where a stipulation is called a "renewal" and the amount of rent for the additional period is not a set amount contained in the original lease but is subject to determination at the time of renewal, a new lease is indispensable. The Court of Appeals has also opined that a renewal rental amount was not uncertain if it were not a matter of negotiation and, in dicta, the court noted that the original lease need not fix all of the terms of the future term, but "may furnish a certain and definite method for their ascertainment and determination in the future."

(Citations omitted.) *Crystal Blue Granite Quarries v. McLanahan*, 261 Ga. 267-268 (1) (404 SE2d 266) (1991). When a stipulation merely lengthens the time upon terms and conditions stated in the lease, it is an extension, and a new agreement is not required. *Powell v. Norman Elec. Galaxy*, 229 Ga. App. 99, 100 (1) (493 SE2d 205) (1997). " '[R]enewal' contemplates the execution of a new contract, whereas 'extension' does not. [Cits.]" *Chalkley v. Ward*, 119 Ga. App. 227, 229 (1) (166 SE2d 748) (1969). Because a determination of the new rent was necessary here, renewal and a new lease were required.

To be enforceable,

> [a] provision for the renewal of a lease must specify the terms and conditions of the renewal with such definite terms and certainty that the court may determine what has been agreed on, and if it falls short of this requirement it is not enforceable. It must be certain and definite both as to the time the lease is to extend and the rent to be paid. A provi-

sion for renewal need not presently fix all of the terms of the new lease; it may furnish a certain and definite method for their ascertainment and determination in the future. On the other hand, if terms, such as duration and rent, are left for future ascertainment, and no method is provided by which they are to be determined, the contract is unenforceable for uncertainty.

(Citations and punctuation omitted.) *McCormick v. Brockett*, 167 Ga. App. 325-326 (306 SE2d 344) (1983) (renewal at the same rent offered by any reputable person not enforceable). A renewal provision is enforceable only if the terms are specified or a method is provided in the provision through which the terms can be ascertained. *Asian Square Partners v. Ly*, 238 Ga. App. 165, 166 (1) (518 SE2d 166) (1999), citing *Patellis v. 100 Galleria Parkway Assoc.*, 214 Ga. App. 154-155 (1) (447 SE2d 113) (1994) (rental rate to "be negotiated in good faith" not enforceable).

In considering circumstances under which options to purchase agreements could be enforced, this court held that such a provision must state the essential elements or provide a "key" or "practical mode" within the contract through which a definite price may be determined. *Wiley v. Tom Howell & Assoc.*, 154 Ga. App. 235, 237 (267 SE2d 816) (1980). The "key," however, cannot be provided by parol evidence. Id.

Therefore, we must consider whether the following renewal provision is sufficiently definite and certain to be enforced.

The rental rate for the renewal term shall be the fair market rental with fair market escalations. Fair market rental rate and fair market escalations being that rate and escalation found within comparable premises in comparable properties within the Northwest office submarket, taking into account any concessions being offered at that time.

Obviously, the provision does not contain a specific rental rate. Therefore, the question is whether "that rate and escalation found within comparable premises in comparable properties within the Northwest office submarket, taking into account any concessions being offered at that time," provide a sufficiently definite key through which the fair market rental rate and escalation could be determined. We must conclude that it does not.

In *Smith v. Huckeba*, 232 Ga. App. 374, 376 (1) (501 SE2d 877) (1998), we concluded that a renewal provision stating that "the rental rate shall be the fair market rental value" of the property was

unenforceable even though "fair market rental value" is not ambiguous because

> the monetary sum it represents is obviously a contested question. Fair market value would have to be determined by an undesignated party, presumably a third party. The contract is too indefinite to be enforced without a further specification by [the parties] of who was to establish the fair market value or, absent that, a mathematical or other objective method which would supply the figure.

(Footnote omitted.) Id. We have the same problem here because no objective method of ascertaining the fair market rental rate is given, and neither comparable premises, comparable properties, nor the Northwest office submarket is defined elsewhere in the lease or in the renewal provision. More significantly, the person or agency charged with selecting these factors and ultimately determining the fair market rental rate is also unspecified. Therefore, this renewal clause does not provide with sufficient certainty a key by which a rental price could be determined by a court without any new expression of the parties. Accordingly, the trial court did not err in declaring that the clause was not enforceable. Compare *Miller v. McCullough*, 236 Ga. 666, 667 (224 SE2d 916) (1976) (sales price in an option contract based on Mortgage Associates, Inc. appraisal sufficiently definite).

In the face of the Georgia precedent cited above, IIC's reliance on authority from other states is misplaced. See, e.g., *Aycock v. Vantage Mgmt. Co.*, 554 SW2d 235 (Tex. Civ. App. 1977); *George Y. Worthington & Son Mgmt. Corp. v. Levy*, 204 A2d 334 (D.C. App. 1964). Moreover, the underlying principle in these cases is that agreements to agree in the future are enforceable, which is not the law in this state.

> If there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement, even though the negotiations evidenced a complete willingness, or even an announced determination, to agree in the future upon such issues as might subsequently arise, it must follow that a valid and binding contract was not made as of the earlier date. Unless all the terms and conditions are agreed on, and nothing is left to further negotiations, a contract to enter into a contract in the future is of no effect. An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto.

(Citations and punctuation omitted.) *Jackson v. Easters*, 190 Ga.

App. 713, 714-715 (1) (379 SE2d 610) (1989). In this instance, the amount of rent to be paid was not agreed upon and was subject to future negotiations. Further, it is not significant that ESSEX actually made a proposal regarding the rent to be paid. The question is whether that proposal was enforceable, and under the law of Georgia, it is not.

3. In view of our disposition of IIC's first enumeration, we need not consider whether the trial court erred by finding that the Statute of Frauds applied.

### Case No. A01A0817

4. In this cross-appeal ESSEX contends the trial court erred by finding that it was not entitled to attorney fees and expenses under Section 7.3, Indemnity, of the lease:

> Tenant during the term hereof shall indemnify and save harmless Landlord from and against any and all claims and demands whether for injuries to persons . . . , or damage to property, occurring within the Premises and immediately adjoining the Premises and arising out of the use and occupancy of the Premises by Tenant, or occasioned wholly or in part by any act or omission of Tenant, [its agents, customers, et cetera], excepting however such claims and demands, . . . caused by the negligence of the Landlord. If, however, any liability arises in the Common Areas because of the negligence of the Tenant, . . . then in such event Tenant shall hold Landlord harmless. In case Landlord shall, without fault on its part, be made a party to any litigation commenced by or against Tenant, then Tenant, shall protect and hold Landlord harmless and shall pay all costs, expenses, and reasonable attorneys fees incurred or paid by Landlord in connection with such litigation. *Tenant shall also pay all costs, expenses and reasonable attorneys fees that may be incurred or paid by landlord in enforcing the covenants and agreements of this Lease.*

(Emphasis supplied.) We also note that Section 9.2, Landlord's Right on Default, contains the statement that: "In the event of any litigation arising out of enforcement of this Lease, the prevailing party in such litigation shall be entitled to recovery of all costs."

ESSEX asserts it is entitled to attorney fees, expenses, and costs under the lease because it prevailed. IIC, however, contends the trial court did not err because ESSEX did not *enforce* a covenant or agreement in the lease, but instead had one of the lease provisions declared unenforceable, and because ESSEX did not give the notice

required by OCGA § 13-1-11 (a) (3) (authorizing recovery of attorney fees in cases based upon notes and other evidence of indebtedness). Under our law, leases can be " 'evidence of indebtedness' within the meaning of OCGA § 13-1-11. *Holmes v. Bogino*, 219 Ga. App. 858, 859 (2) (467 SE2d 197) (1996)." (Punctuation omitted.) *Ga. Color Farms v. K.K.L., L.P.*, 234 Ga. App. 849, 852 (3) (507 SE2d 817) (1998).

Applying the usual rules of contract interpretation, we find that IIC's argument is too narrow. ESSEX brought the action to secure a declaration that IIC had to vacate the leased premises at the end of the lease. Thus, the action was to enforce the five-year term of the lease. The fact that the result was obtained through a ruling that declared another section of the lease unenforceable is of no significance. Additionally, although OCGA § 13-1-11 is applicable to some actions involving leases, it is not applicable to all claims for attorney fees based on a lease provision. *Boddy Enterprises v. City of Atlanta*, 171 Ga. App. 551, 552-553 (320 SE2d 374) (1984). Under the circumstances, we do not find that ESSEX's failure to give the notice under OCGA § 13-1-11 precludes the grant of attorney fees. Therefore, as the plain terms of the lease authorize the award of attorney fees, expenses, and costs, we find that the trial court erred by denying ESSEX's request in its entirety. Accordingly, that part of the trial court's order denying ESSEX's request must be vacated and the case remanded with instructions to consider an appropriate award of attorney fees, expenses, and costs.

*Judgment affirmed in Case No. A01A0816. Judgment vacated and remanded with direction in Case No. A01A0817. Smith, P. J., and Phipps, J., concur.*

DECIDED JUNE 4, 2001

Owen, Gleaton, Egan, Jones & Sweeney, Maurice M. Egan, Jr., Marla M. Eastwood, for appellant.

Kritzer & Levick, Joseph S. Carr, Christen C. Carey, Catrina C. Creswell, for appellee.