**CASCADE CROSSING II, LLC,
Plaintiff–Appellee,**

v.

**RADIOSHACK CORPORATION, f.k.a.
Tandy Corporation, Defendant–
Appellant.**

No. 06–13571.

United States Court of Appeals,
Eleventh Circuit.

March 13, 2007.

---

Burke A. Noble, Bruce A. Taylor, Jr., Drew, Eckl & Farnham, LLP, Atlanta, GA, for Defendant–Appellant.

David L. Pardue, Jill R. Johnson, Hartman, Simons, Spielman & Wood, LLP, Atlanta, GA, for Plaintiff–Appellee.

Before EDMONDSON, Chief Judge, and TJOFLAT and GIBSON,* Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO O.C.G.A. § 15–2–9. TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

In this case, we are asked to determine the relevance and application of a statutory cap on attorneys' fees under O.C.G.A. § 13–1–11 to a contract dispute between Cascade Crossing II, LLC ("Plaintiff") and Radioshack Corp. ("Defendant"). Because the issue in this case is solely a question of Georgia state law upon which Georgia courts seem as yet to have provided no clear answer, we certify the question to the Georgia Supreme Court.

---

* Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

## I. Background

Plaintiff owns a shopping center ("mall") in Georgia and entered into a written commercial lease agreement in 1995 with Defendant to lease a space at the mall. Section 26 of the lease agreement is a product exclusivity clause ("exclusivity clause"), which provides that, in the event Plaintiff leases space at the mall to another tenant "whose primary use involves the sale of electronic equipment and components," Defendant has the right either (a) to reduce the rent down to 3% of its gross monthly sales or (b) to terminate the lease agreement. Section 31 of the lease agreement states that "[i]f either party hereto shall bring legal action against the other party, the prevailing party shall be entitled to reimbursement from the other party for all reasonable expenses thus incurred including reasonable attorneys' fees."

In 1996, Plaintiff entered into a lease with BellSouth Mobility, Inc., n.k.a. Cingular Wireless ("BellSouth"), a company that sells cell phones and related wireless services. From 1996 through the filing of this suit, Defendant and BellSouth both operated at the mall and were aware of each other's presence. Defendant, however, never objected to BellSouth's presence or attempted to exercise Defendant's rights under the exclusivity clause until the end of 2000. Defendant then informed Plaintiff that the BellSouth lease violated the exclusivity clause and that Defendant would exercise the right to pay rent of only 3% of its gross monthly sales, to be applied retroactively to the start of the BellSouth lease. Defendant calculated that it had overpaid more than $41,000 in rent, gave itself a rent credit, and stopped making rent payments.

Plaintiff filed suit against Defendant seeking (1) a declaration that the BellSouth lease did not violate the exclusivity clause; (2) an alternative declaration that Defendant had waived the right to enforce the exclusivity clause by failing to provide notice of the violation for four years; (3) damages for breach of contract, including unpaid back rent; and (4) attorneys' fees and costs. On cross-motions for summary judgment, the district court concluded that the BellSouth lease violated the exclusivity clause but that—to the extent that Defendant sought to reduce its rent during the pertinent four-year period—Defendant had waived the right to enforce the exclusivity clause by waiting four years to provide notice of Defendant's intent to exercise its rights. The district court determined that Defendant had not waived its right to enforce the exclusivity clause from the point Defendant gave notice of the violation to Plaintiff. After concluding that neither party had "prevailed," the district court denied both parties' requests for attorneys' fees and costs.

On an appeal to this Court, we reversed the district court's order and remanded the case because we concluded that, under Georgia law, Defendant had waived all of its rights under the exclusivity clause, including the right to reduce both past and future rental payments. We also determined that Plaintiff was the only prevailing party and was entitled to attorneys' fees and costs under Section 31 of the lease agreement.

On remand, the parties agreed on the amount of backrent owed ($172,039) but disputed the amount of attorneys' fees that Plaintiff could recover. Plaintiff argued that under the lease agreement, Defendant should pay the full amount of Plaintiff's attorneys' fees and costs, which amounted to nearly $280,000. Defendant argued that O.C.G.A. § 13–1–11 capped Plaintiff's fees at 15% of the first $500 collected and 10%

of the remaining amount, or $17,288.[1] The district court concluded that O.C.G.A. § 13–1–11 did not apply. The district court awarded Plaintiff $282,924 in fees and costs. This Court then vacated the district court's judgment and again remanded because the district court had not explained the basis for concluding that O.C.G.A. § 13–1–11 did not apply.

On second remand, the district court reaffirmed its former decision to award Plaintiff full fees under the contract. The district court relied on *Ins. Indus. Consultants, Inc. v. Essex Invs., Inc.*, 249 Ga. App. 837, 549 S.E.2d 788, 794 (2001) (concluding that O.C.G.A. § 13–1–11 did not apply to a lawsuit brought by a landlord seeking a declaration of the parties' rights under a renewal provision in a commercial lease agreement). The district court reasoned that O.C.G.A. § 13–1–11 did not apply because this case was "not merely an action to recover past due rent" in that, as in *Essex*, Plaintiff had "sought a declaration as to the enforceability of the Exclusivity Provision."[2] This appeal ensued.

## II. Discussion

After reviewing Georgia case law, we are uncertain whether O.C.G.A. § 13–1–11 applies to cap the award of attorneys' fees in this case. Although Georgia courts have applied O.C.G.A. § 13–1–11 to rent-collection disputes involving lease agreements,[3] we question whether, under Georgia law, the mere fact that a lawsuit between landlord and tenant involves the collection of past due rent is sufficient for O.C.G.A. § 13–1–11 to apply. On the other hand, we also question whether the statutory cap on attorneys' fees is inapplicable simply because the lease agreement dispute involves some determination of the contractual rights of the parties beyond the collection of past due rent. Therefore, without ruling on an unresolved question of state law that the Georgia Supreme Court has not addressed, we are unable to determine whether the statute limits the award of attorneys' fees in this case.

We have written that "[s]ubstantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir.2003). Under Georgia law, this Court may certify an unresolved question of state law to the Georgia Supreme Court if the question is determinative of the case and no clear and controlling precedent from the Georgia Supreme Court exists. O.C.G.A. § 15–2–9. Because resolution of this issue is determinative of the case and because we have found no such controlling precedent, we certify the following question to the Georgia Supreme Court:

1. Georgia Statutes section 13–1–11 provides in relevant part:

(a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:

. . . .

(2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.

2. The district court pointed out that had Defendant been able to invoke its rights under the exclusivity clause, Defendant could have lowered its rent or terminated the lease.

3. *See, e.g., Logistics Int'l, Inc. v. Raco/Melaver, LLC*, 257 Ga.App. 879, 572 S.E.2d 388, 391 (2002); *Ga. Color Farms, Inc. v. K.K.L. Ltd.*, 234 Ga.App. 849, 507 S.E.2d 817, 820 (1998).

Whether O.C.G.A. 13–1–11 applies to and limits the award of attorneys' fees and costs in this particular case—where the landlord under a commercial lease agreement filed suit against a tenant seeking the collection of past due rent as well as a declaration of other contractual rights of the parties—and, therefore, precludes an award of full attorneys' fees and costs as provided in the lease agreement.

This question is solely an issue of Georgia state law that should be decided by the Georgia Supreme Court.

In certifying this question, we do not intend to restrict the issues considered by the state court or to limit the state court's discretion in choosing how to frame or to answer these issues in the light of the facts of this case. *See Miller v. Scottsdale Ins. Co.*, 410 F.3d 678, 682 (11th Cir.2005). To assist the state court's consideration of this question, the entire record in this case and the briefs of the parties are transmitted herewith.

QUESTION CERTIFIED.