70606, 70607. BRUNSWICK MANUFACTURING COMPANY,
INC. et al. v. SIZEMORE et al. (two cases).
(338 SE2d 288)

CARLEY, Judge.

The appellants in the instant companion cases were all named as defendants in an original multi-count complaint filed by appellees on December 29, 1982. A set of interrogatories was served on appellants in conjunction with appellees' complaint. On January 31, 1983, appellees served an additional set of interrogatories on appellant Kaper-Jac, Inc. Appellants filed timely answers to the complaint. By April 5, 1983, however, appellees had not yet been served with any response to their interrogatories, and they filed a motion seeking to compel that response or, in the alternative, to strike appellants' answers. On April 6, 1983, appellant Kaper-Jac, Inc. served its response to the interrogatories of January 31. Also on April 6, 1983, responses were served on behalf of all appellants as to the original set of interrogatories which had accompanied the complaint.

A hearing was then held on appellees' motion to compel or to strike. This hearing was apparently not reported but, on May 5, 1983, the trial court entered an order stating that appellants had "until May 16th, 1983, to answer said interrogatories fully and completely in the spirit of discovery contemplated by the [C]ivil [P]ractice [A]ct of the State of Georgia. . . ." On May 16, 1983, a document denominated as appellants' "amended response" to appellees' interrogatories was timely served by mailing a copy to appellees' counsel. See OCGA § 9-11-5 (b). As to numerous interrogatories, appellant's "amended response" did contain additional factual information. In several instances, however, appellants' "amended response" not only did not contain additional information but consisted of merely the assertion of an objection to the underlying interrogatory. The record shows that the majority of such objections in the "amended response" were asserted as to interrogatories for which factual answers had *already* been supplied in appellants' original response of April 6. Shortly after service of appellants' "amended response," appellees filed a renewed motion to strike appellants' answers.

On June 29, 1983, appellants filed a motion for partial summary judgment. Appellants' motion sought summary judgment as to all issues, with the exception of contractual liability and compensatory contractual damages. Over a year later, on July 29, 1984, the trial court conducted a hearing on the various motions pending in the case, including appellants' motion for partial summary judgment and ap-

pellees' motion to strike appellants' answers. After the hearing, the trial court ruled that, of the numerous counts alleged in the complaint, appellees' only viable claim was in contract. Appellees were ordered "to recast the complaint sounding said complaint as a breach of contract and deleting all [other] allegations. . . ." However, the trial court also granted appellees' motion to strike appellants' answers. Appellees thus having been limited to only the assertion of a contract claim, and appellants' liability having been established by the striking of their answers, the trial court's final order was that the case would be submitted to the jury only as to the issue of damages. As ordered, appellees filed a recast complaint sounding solely in contract, and after a jury trial was held as to damages, a verdict was returned awarding appellees compensatory damages, attorney fees, and costs. Judgment was entered on the verdict, and appellants' post-judgment motions were denied. The two instant appeals, Case Numbers 70606 and 70607, were separately filed on the part of appellants and those two appeals are consolidated for disposition in this single opinion.

1. Appellants enumerate as error the trial court's striking of their answers, the effect of which was to render them in default as to appellees' contract claim.

When appellees filed their original motion in April of 1983, appellants had served no response whatsoever to the interrogatories. Under such circumstances, the trial court, in the exercise of its discretion, would have been authorized to grant appellees' motion to strike, even though appellants did serve responses after the motion for sanctions had been filed. See OCGA § 9-11-37 (d); *Danger v. Strother*, 171 Ga. App. 607, 609 (2) (320 SE2d 613) (1984). However, the trial court chose not to do so, electing instead to order that appellants make a further response by May 16, 1983. Accordingly, resolution of the instant case depends upon whether appellants "fail[ed] to obey [that] order to provide or permit discovery," so as to authorize the trial court to strike their answers pursuant to OCGA § 9-11-37 (b) (2) (C). In resolving this issue, we must be guided by the following principle: "It is not a mere technical failure to comply with an order that will justify such extreme sanctions. '(T)he drastic sanctions of dismissal and default cannot be invoked under [OCGA § 9-11-37] except in the most flagrant cases — where the failure is wilful, in bad faith or in conscious disregard of an order.' [Cit.] '(A) showing of wilfulness (is) a predicate to imposition of the harsher sanctions. [Cits.]' [Cit.]" *Thornton v. Burson*, 151 Ga. App. 456, 458-459 (260 SE2d 388) (1979).

Having already served an initial response and having timely served an "amended response," appellants had, by the May 16, 1983 deadline, served some form of response to appellees' interrogatories.

Compare *Swindell v. Swindell*, 233 Ga. 854 (213 SE2d 697) (1975); *Porter v. Eastern Airlines*, 165 Ga. App. 152, 153 (1) (300 SE2d 525) (1983); *Tompkins v. McMickle*, 172 Ga. App. 62 (321 SE2d 797) (1984). "All decisions of the Supreme Court and this court approving imposition of the drastic sanction of dismissal or default involve a *total* failure to respond to an order compelling discovery. . . ." (Emphasis in original.) *Thornton v. Burson*, supra at 461. As noted, the "amended response" did contain additional factual information which supplemented the original response as to numerous of the interrogatories. However, in several instances it asserted only objections to certain interrogatories, even though the time had already passed within which such objections could be raised as a viable response to a request for discovery. See *Drew v. Hagy*, 134 Ga. App. 852 (216 SE2d 676) (1975). Thus, the specific issue becomes whether there was a sufficient showing that, despite the timely supplemental response as to some interrogatories, appellants' attempt to raise untimely objections to several others was such a "wilful" total failure on their part to comply with the trial court's order of May 5, 1983, that the imposition of the harsh sanction of striking their answers was authorized.

In *Thornton v. Burson*, supra at 461, we held that if, after being ordered to make further discovery, one fails "to respond either in timely fashion *or* in *exact* accordance with the order, a subsequent order granting judgment by default would be justified." (Emphasis in original.) However, it is also clear that a mere hindsight determination of the *inadequacy* of an otherwise timely response to an order compelling discovery will not necessarily demonstrate the wilfulness necessary to authorize the imposition of the harsher sanctions of OCGA § 9-11-37 (b) (2). Our holding in *Thornton v. Burson*, supra, as to the requirement of "exact" compliance was itself predicated upon the existence of an order setting "forth *with specificity* the details [of the further discovery compelled] to [be] furnish[ed]." (Emphasis supplied.) *Thornton v. Burson*, supra at 461.

From the perspective of hindsight, insofar as the instant "amended response" did contain untimely objections, it cannot be said to evince "exact" compliance with the technical rules of discovery. However, when wilful non-compliance is considered from the perspective of foresight, nothing in the May 5, 1983 order itself specified that objections were not even to be considered as potential responses to the interrogatories. What does appear from the transcript of the July 29, 1984 hearing is that the trial court apparently did not take into account the fact that an original response had *already* been served to the interrogatories prior to appellants' "amended response." The latter response should be considered as a supplement to rather than a total replacement of the former. If the *original* response to any interrogatory could already be deemed by appellants to be a "full and

complete" response thereto, the spirit of the May 5 order would not necessarily be violated by their filing of an amended response which only raised an untimely objection to that interrogatory. The act of raising such an objection after a factual response had *already* been given could be ignored as merely superfluous. However, the trial court made no effort to determine whether, considering *both* the original and amended responses, appellants were in wilful and conscious disregard of its order and not merely ignorant of the fact that their objections could no longer be considered.

Moreover, it appears that the issue of whether appellants had *already* technically waived the right to raise objections was never specifically addressed at any time prior to May 5, 1983. At the hearing on July 29, 1984, the attorney representing appellants expressed what had been his understanding as to the mandate of the order compelling discovery. According to counsel's recollection of what had transpired at the unreported hearing which resulted in that order, the trial court had made certain statements in the course of that hearing which had been construed to mean that appellants were also being authorized to include for purposes of their "amended response" any such objections to the interrogatories as had *not* previously been raised in their original response. Such a good faith, but technically erroneous, interpretation of the legal effect of the May 5, 1983 order would certainly be consistent with the subsequent serving of an "amended response" which included both supplementary factual responses in some instances and also objections *even* to interrogatories which had already been factually answered in the original response of April 6, 1983. Pursuant to such an "understanding," objections in the "amended response" would constitute both a tacit reaffirmance of the original response, as well as a good faith but ultimately belated attempt to preserve the right to urge to the court that the interrogatory did not seek discoverable material. In response to this "understanding" expressed by appellants' counsel, the trial court did not specifically dispute the possibility that it may have inadvertently fostered such an erroneous construction of its May 5, 1983 order. The trial court merely stated that it did not remember *what* it may have said during the earlier hearing.

Absent any showing that the trial court did previously specify, either in its May 5, 1983 order or at the hearing which resulted in that order, that the raising of objections would *not* be acceptable response to *its* order, we are constrained to hold that the record before us indicates only that the timely "amended response" was served pursuant to appellants' ignorance of the technical inadequacy evidenced by their inclusion of the several untimely objections. OCGA § 9-11-37 (b) (2) is not designed to punish parties when their otherwise timely but partially inadequate response to discovery orders is the result of

their counsel's erroneous misunderstanding of the full mandate thereof. *Thornton v. Burson*, supra. It is designed to punish a *wilful* failure or *conscious* disregard of an order. *Swindell v. Swindell*, supra. "[W]e believe . . . that appellant[s'] response to the [May 5, 1983] order to compel — inadequate though it may be — should not have been treated as a total failure to respond under [OCGA § 9-11-37] so as to authorize the imposition of the ultimate sanction. The court, in ordering further discovery after finding insufficient the [April 6, 1983] answers, could have set forth with specificity the details appellant[s] [were] to furnish. . . . We further observe that in ruling on appellee[s'] motion for sanctions, the trial court would have been justified in imposing one or more of the other sanctions available under [OCGA § 9-11-37]. It is only the striking of the defensive pleadings and the granting of default judgment that we find to be overly harsh" under the circumstances. *Thornton v. Burson*, supra at 461.

Appellees assert that there are various other reasons why the trial court could have ordered appellants' answers stricken. However, the record clearly reveals that the *only* basis for striking the answers urged by appellees and considered by the trial court was the fact that untimely objections were contained in appellants' "amended response" of May 16, 1983. A review of the transcript of the July 29, 1983 hearing indicates that the trial court was acting *solely* pursuant *to its understanding that, under the law, it had no discretion to accept the untimely objections as a proper response to interrogatories.* See *Drew v. Hagy*, supra. However, the true issue was not whether the trial court had discretion to accept appellants' "amended response" but whether, considering that response as well as the original one, appellants had demonstrated a wilful failure to comply with the order of May 5, 1983. Pleadings may not be stricken "without first holding an evidentiary hearing on the issue of wilfulness." *Harwood v. Great American Mgt. &c.*, 164 Ga. App. 703 (298 SE2d 263) (1982). Although a hearing was conducted in the instant case, the transcript of that hearing discloses that the issue of appellants' wilfulness, as opposed to the technical inadequacy of their amended response, was never addressed. Cf. *Harwood v. Great American Mgt. &c.*, supra.

Accordingly, pretermitting whether there were other reasons upon which the trial court *could* have determined to strike appellants' answers, the one upon which it *did* was erroneous. Compare *Swindell v. Swindell*, supra. "[W]here it is apparent that the court rests its judgment on reasons which were erroneous or upon an erroneous legal theory, it commits reversible error. [Cits.]" *Smith v. Helms*, 140 Ga. App. 267, 269 (3) (231 SE2d 778) (1976). "Under the procedural scenario sub judice, we hold that the trial court erred in striking appellant[s'] answer[s] and in granting judgment by default. [When] the

trial court deemed appellant[s'] supplemental answer [to the interrogatories] to be deficient, the proper judicial action would have been the entry of an order [specifying that the right to object had been waived and] compelling additional supplemental answers." *Thornton v. Burson,* supra at 461.

2. Remaining enumerations of error have been considered. They appear to fall into one of two categories. Many have been rendered entirely moot by virtue of Division 1 of this opinion, which necessitates that a trial be conducted as to liability, as well as to damages. Others appear to concern matters which are unlikely to recur when such a trial is held. Accordingly, no remaining enumerations need be addressed.

*Judgments reversed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 14, 1985.

*Ivan H. Nathan, Neal G. Gale,* for appellants.
*John T. McKnight, Jr.,* for appellees.