## A94A2655. HOWARD v. HAMMOND.
### (455 SE2d 390)

ANDREWS, Judge.

Howard appeals from the judgment entered on the jury's verdict in favor of Hammond, plaintiff below, in their dispute over the dissolution of a partnership.

Viewed with all inferences in favor of the jury's verdict, the evidence was that Howard ran the Lambert Insurance Agency of Cleveland. She had an agency contract with Allstate Insurance Company which allowed her and any employees of her agency to sell Allstate products. Allstate wanted to expand into Dahlonega and approached Howard about opening an office there and giving her the agency contract to write Allstate insurance. She had met Hammond socially before and talked to him about working for her at the Lambert Insurance Agency of Dahlonega. Hammond was licensed to sell all types of insurance and had previously worked for Georgia Farm Bureau Insurance before starting his own insurance business in his home.

Around May 1990, Howard and Hammond reached an oral employment agreement whereby he would be paid $1,500 a month as salary, she would channel him all of her life and health insurance prospects from her Cleveland agency and he would keep all life and health insurance commissions. She would in turn receive all of the commissions for property and casualty insurance, i.e., the Allstate business.

On June 21, 1990, an Agency Agreement was entered into by All-state Insurance Company and "Lambert Insurance Agency, County of Lumpkin [Dahlonega] . . . (hereinafter referred to as 'the Agent')." The agreement was signed for Lambert Insurance by Howard "Agency Owner/Principal." In Article IX, Paragraph B (1), it provided that it would be terminated on the effective date "of any sale, transfer, or merger of the Agent's business or interest therein unless the company consents in writing to the assignment of the Agreement or enters into a new Agency Agreement."

From June to August, Hammond, who was also a carpenter, worked renovating the Dahlonega office. The office had its grand opening in September 1990. In October, Howard was unable to pay Hammond's salary. She wrote him a check but it was returned by the bank. As a result, Hammond went to see Howard and, during the discussions, the idea of his investing in or buying half of the Dahlonega agency was discussed. Fowler, Howard's attorney, met with the two of them a number of times and a contract was prepared by him. It established a 50/50 partnership. For his half interest, Hammond mortgaged his home and gave Howard a check for $25,000. The agreement was signed on November 9, 1990, retroactive to October 1, 1990.

The agreement provided, in part, that whereas "Howard is the sole owner of a general insurance agency known as Lambert Insurance of Dahlonega . . . and . . . has the Agency Agreement with Allstate Insurance Company; and . . . Hammond is a licensed insurance agent . . . licensed in all lines of insurance sales; and . . . Hammond desires to purchase a one-half (½) interest in said insurance agency owned by Howard known as Lambert Insurance of Dahlonega, and Howard is desirous of selling a one-half (½) interest in said insurance agency to Hammond . . ." that the sale would be consummated and a partnership formed to carry out the business in Dahlonega. In addition to initial capital contributions, the partners would share expenses and profits/losses 50/50.

Paragraph 27 provided that "[e]ither Partner may withdraw from the partnership upon giving written notice to the other Partner at least ninety (90) days prior to his or her intentions to withdraw. The withdrawal shall become effective upon termination of the ninety (90) day notice. On withdrawal of a Partner, that Partner's share shall be determined by evaluating the worth of the partnership, and the withdrawing Partner shall be paid (a) a cash payment . . . for the value of . . . unrepaid capital contributions, if any, plus ten per cent (10%) interest thereon, (b) a cash payment . . . for his interest in the current year's profits, if any, and (c) an annual cash payment . . . after the close of each fiscal year for the Partner's share of receipts from business obtained prior to . . . withdrawal but completed after withdrawal."

Howard had the option, at the end of 1993, to sell her half to Hammond and he agreed to give her right of first refusal if he decided to sell his interest.

On November 16, 1990, Owen, Howard's accountant, sent her a letter regarding the Dahlonega agency and stated that, on the books, "we will show your investment equal to [Hammond's] which in effect will off-set to the Furniture, Fixtures, Sign and other Start-up Cost you have put in and the balance to the value of an Asset which is the All State Ins. Contract."

Prior to its termination, 90 percent of the business done by the Dahlonega agency was Allstate property and casualty insurance.

On March 14, 1991, Howard sent Hammond a certified letter stating that "[t]his is to notify you that under Paragraph 27 of our Agreement of November 9, 1990, I am providing you with the required notice of my intent to dissolve the partnership. The effective date of the termination is June 12, 1991."

Hammond did not immediately respond, believing that, pursuant to the partnership agreement, he now had the right to take over the partnership by complying with the provisions of Paragraph 27 and tendering her the payment provided for therein. He continued to go into the office and conduct business until Howard had the locks changed on the office and the post office box. Without conceding the accuracy of the amount, Hammond's attorney sent a tender of the amount alleged due to Howard pursuant to the dissolution and "conditioned upon Howard immediately turning over all partnership assets including the Allstate Insurance Contract."

Howard sent all the customers of the agency letters advising that the agency was now "Lumpkin County Insurance Services (local ALLSTATE agent)" and that Hammond was no longer affiliated with the agency nor was he an authorized Allstate agent.

Hammond filed suit, alleging breach of the agreement, wrongful dissolution, fraud, and claiming punitive damages and attorney fees. Howard counterclaimed, contending that he had breached the contract and seeking her attorney fees. The jury awarded Hammond $20,000 for breach of contract, $45,000 for fraud, $10,000 for wrongful dissolution, $5,000 punitive damages, and attorney fees.

1. In her first and second enumerations of error, Howard contends the court erred in not granting her motion for directed verdict, j.n.o.v. or new trial on the issue of fraud. They are addressed together.

" ' "(O)n appeal, we must construe the evidence most strongly to support the jury verdict and the judgment" (cit.); likewise, in considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion. (Cit.) The standard for review of a directed verdict and a judgment n.o.v. are the same: "Where there is no conflict in the evidence as to any

material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." (Cit.)' *Mattox v. MARTA,* 200 Ga. App. 697 (1) (409 SE2d 267) (1991); *Pendley v. Pendley,* 251 Ga. 30 (1) (302 SE2d 554) (1983). Our review is the 'any evidence' standard. *Mattox,* supra. It is important to remember that this court does not consider the *weight* of the evidence. *Moultrie Farm Center v. Sparkman,* 171 Ga. App. 736, 738 (2) (320 SE2d 863) (1984)." *J. B. Hunt Transp. v. Bentley,* 207 Ga. App. 250, 254 (2) (427 SE2d 499) (1993).

So viewing the evidence here, there was evidence to support Hammond's contention that, at the time of signing the partnership agreement, Howard had no intention of including the Allstate contract in the assets of the partnership being formed, despite language in the agreement and other documents indicating it was the primary asset of the agency.

"While fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, [the promisor] knows that the future event will not take place." *Hayes v. Hallmark Apts.,* 232 Ga. 307, 308 (207 SE2d 197) (1974). "A promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud." *Middlebrooks v. Lonas,* 246 Ga. 720, 721 (272 SE2d 687) (1980); *Miner v. Harrison,* 205 Ga. App. 523, 525 (2) (422 SE2d 899) (1992); *Rogers v. deMonteguin,* 193 Ga. App. 480, 481 (1) (388 SE2d 10) (1989).

Therefore, the trial court did not err in denying Howard's motions for directed verdict, j.n.o.v., and new trial. *Miner,* supra.

2. The third enumeration is that the court erred in denying the motion for j.n.o.v. on the ground that entering judgment on both the breach of contract and wrongful dissolution claims was an impermissible double recovery.

Here, in addition to contending that Howard breached the partnership agreement by failing to comply with the withdrawal provisions in Paragraph 27, Hammond further contended that Howard locked him out of the office and precluded him from servicing clients for whom he had written insurance.

This issue is controlled adversely to Howard by *Wilensky v. Blalock,* 262 Ga. 95, 98 (3) (414 SE2d 1) (1992). As held there, " '(L)aws in existence at the time a contract is executed are part of that contract. (Cit.)' *Busbee v. American Assn. of Univ. Professors,* 235 Ga. 752 (2) (221 SE2d 437) (1975). Already in existence at the time the partnership in question here was created was the provision in OCGA § 23-2-58 that partners owe a duty to act in the 'utmost good faith' with regard to each other. Therefore, it follows, . . . , that the partnership agreement here included, as a matter of law, an agreement

that [the partners] would act in utmost good faith toward one another. . . . [O]ne partner's exercise of the right to terminate the partnership, if done in bad faith for the purpose of appropriating to that partner's benefit the prosperity of the partnership, would be a violation of the partnership agreement and would constitute wrongful dissolution of the partnership. . . . While the contract here contained a right for [Howard] to terminate it at will, it did not expressly give [her] the right, in the course of that termination, to keep for [herself] all the assets and business opportunities of the partnership. A review of the testimony at trial would authorize the jury to believe that [Howard] physically excluded [Hammond] from the partnership's place of business and kept for [herself] all the partnership's material assets and continuing income . . . , that [Howard's] conduct was a breach of the implied duty of good faith in the . . . partnership agreement, and that the breach of that agreement caused [Hammond] damages." *Wilensky*, supra at 98-99.

Therefore, there was no error in entering judgment on both the breach of contract and wrongful dissolution claims.

*Judgment affirmed. Beasley, C. J., and Johnson, J., concur.*

DECIDED MARCH 16, 1995.

*Smith, Gilliam & Williams, M. Tyler Smith,* for appellant.
*Bonnie C. Oliver,* for appellee.