A01A0166. RICHES TO RAGS, INC. v. McALEXANDER & ASSOCIATES, INC.
(549 SE2d 474)

RUFFIN, Judge.

Over three years after McAlexander & Associates, Inc. (McAlexander) filed suit against Riches to Rags, Inc., the trial court struck Riches to Rags' answer and counterclaims for discovery abuses. On appeal, Riches to Rags contends that the trial court abused its discretion in so doing. We disagree and affirm.

The record demonstrates that McAlexander agreed to distribute Riches to Rags' products and Riches to Rags agreed to pay a seven percent commission on goods sold. McAlexander contends that, in 1996, Riches to Rags failed to pay certain commissions and McAlexander obtained an attorney who sent a demand letter to Riches to Rags. Stanley Atkins, who managed Riches to Rags, responded by writing a letter to the attorney denying that Riches to Rags owed any commissions. Atkins also wrote that

> this [case] will drag over two years or three and even if you have a still tight case (which [McAlexander] couldn't be further from), it still doesn't mean [McAlexander] will be a winner. . . . It was [McAlexander] who caused this and it will be [McAlexander] who loses. Sure you can sue me. I also can play this game and once I start I will not let go and he will

---

[36] See *Reid v. State*, 204 Ga. App. 358, 362 (4) (419 SE2d 321) (1992).

not be able to afford it. . . . You say I owe you, then sue. Then I'll start playing the game.

In April 1997, McAlexander filed suit and served its first interrogatories, seeking information regarding orders placed and commissions paid. Rather than providing the information in narrative form, Riches to Rags elected to produce documents, which it claims were responsive to McAlexander's interrogatories. Donna Guttmann, a McAlexander employee, examined four boxes produced by Riches to Rags containing over 11,000 documents. According to Guttmann, the boxes included documents pertaining only to those orders for which McAlexander had already been paid. In her affidavit, she also stated that the "documents were not organized or assembled in a fashion that would enable [McAlexander] to reasonably obtain the information necessary to confirm the commissions due and owing." McAlexander wrote Riches to Rags, asserting that Riches to Rags had failed to produce the requisite information and requesting that Riches to Rags supplement its discovery responses.

Riches to Rags apparently did not supplement its responses, and on August 18, 1997, McAlexander filed a motion to compel discovery. Following a hearing on the motion, the trial court ordered Riches to Rags to "prepare a monthly accounting in substantially the same form as [Riches to Rags] provided to [McAlexander] prior to the termination of their agreement."

Riches to Rags produced an accounting and submitted an amended answer in which it conceded that "it *may* be indebted to [McAlexander] in the amount of $9,970.68." Notwithstanding Riches to Rags' apparent concession, McAlexander asserted that Riches to Rags' accounting was incomplete and did not fully comply with the trial court's order. The trial court conducted a hearing to address McAlexander's assertion, after which it determined "that an independent accounting is required in order to obtain the information necessary for the case to proceed and to determine whether [Riches to Rags] has complied with the terms of this Court's [prior] Order." The parties were unable to agree upon an auditor, and on September 28, 1998, the trial court appointed Frank Henry.

Once Henry was appointed, the parties were ordered to pay him fifty percent of his retainer within ten days of receiving his retainer agreement. On September 30, 1998, Henry forwarded "Engagement Letters" to both McAlexander and Riches to Rags, but did not receive a response or payment from Riches to Rags until October 26, 1998, well after the time specified by the trial court. Upon receiving the signed agreement, Henry wrote the attorney for Riches to Rags, informing him that the audit was scheduled for November 10 through November 12, 1998. Nevertheless, Riches to Rags waited

until November 16, four days after the audit was to commence, to send Henry any documents, which Henry characterized as "incomplete, constituting merely a partial document production."

In a letter dated November 19, 1998, Henry requested that Riches to Rags produce additional information, including (1) a comprehensive sales journal for the relevant time period; (2) bank statements; (3) a reconciliation to each deposit amount by customer; (4) a listing of each bank and account number used; and (5) a list of all people who performed accounting for Riches to Rags and their availability for meetings. The attorney for Riches to Rags called Henry and informed him that the company did not maintain a comprehensive sales journal or deposit reconciliations, but that Riches to Rags would gather and forward bank statements and provide the name of its accountant.

Riches to Rags did not provide this information, and Henry wrote again on December 9, 1998, requesting the information and reminding the company that, pursuant to Henry's engagement letter, it was subject to a $500 per day penalty if it failed to cooperate. Atkins responded by letter dated December 14, 1998, forwarding "all of the bank statements [he could] find." Atkins also wrote,

> [w]e are a mom and pop business and this is our busiest time of the year. We have not had time to prepare what you need. Your letter of request on November 19, 1998 was in our peak time. Since this has been going on for over 2 years now the only rush I see is that you are heading into *your* busiest time. Mr. Henry it is us who are paying for this service.

(Emphasis in original.) Atkins later found additional bank statements, which were forwarded to Henry. On December 29, 1998, Atkins wrote Henry that he was "welcome to our offices [to] dig [and] get whatever else you need." Evidently, Riches to Rags did not produce any additional information, and Henry did not go to Riches to Rags' offices to look for more documents.

McAlexander subsequently filed a motion for sanctions, requesting that the trial court strike Riches to Rags' answer and counterclaims "for discovery abuse and non-compliance with the Court's Orders." Following a hearing, the trial court granted the motion, finding that Riches to Rags

> has intentionally and wilfully refused to comply with the Orders of the Court and that [Riches to Rags] has further engaged in a campaign of obstruction throughout the pendency of this case. . . . Although [Riches to Rags] has pro-

vided some responsive answers and documentation to [McAlexander, Riches to Rags] has consistently failed to provide complete documentation and figures for the business to [McAlexander], to the court-appointed auditor, and to the Court in the intervening two years and eight months since [McAlexander's] Requests were filed. . . . The record is replete with examples of [Riches to Rags'] diversionary and obstructive tactics avoiding compliance with the express mandates of this Court. In [Riches to Rags'] repeated arguments that it invited [McAlexander] and the court-appointed auditor to go through [its] records and find anything that they believed they were missing, [Riches to Rags] has attempted to place the responsibility for providing relevant and complete documentation of the business and its transactions on [McAlexander] and on the court-appointed auditor, rather than acknowledging its own burden to comply with discovery. Neither [McAlexander], nor the court-appointed auditor, nor the Court itself has any burden to shoulder [Riches to Rags'] duty to generate the necessary information. . . . The Court further notes [Riches to Rags'] persistently tardy responses to Court mandates, including the untimely and grudging production of documents and payment to the court-appointed auditor. Based upon a consideration of all of the evidence, the Court finds that [Riches to Rags'] excuses and explanations are patently incredible. This Court is instead constrained to find that [Riches to Rags] has intentionally mismanaged its records to obstruct discovery and to prolong litigation to [McAlexander's] detriment, exactly as promised in [Riches to Rags'] ill-advised initial letter to [McAlexander].

"Trial judges have broad discretion in controlling discovery, including [the] imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion."[1] If a party wilfully fails to comply with a court order regarding discovery, a trial court may even impose the harsh sanctions of dismissal and default.[2] "The sanction of dismissal for failure to comply with discovery provisions of the Civil Practice Act requires only a conscious or intentional failure to act, as distin-

---

[1] (Punctuation omitted.) *Butler v. Biven Software*, 238 Ga. App. 525, 527 (2) (522 SE2d 1) (1999).

[2] See *Gen. Motors Corp. v. Conkle*, 226 Ga. App. 34, 38 (1) (486 SE2d 180) (1997) (physical precedent only).

guished from an accidental or involuntary non-compliance."[3] If a trial court determines that a party has consciously or intentionally failed to act, we will affirm that trial court's factual finding if there is any evidence to support it.[4] In this case, ample evidence supports the trial court's determination that Riches to Rags purposefully engaged in dilatory tactics and intentionally failed to provide requested information in a timely manner.

Riches to Rags maintains that sanctions are unwarranted, arguing that it timely responded to McAlexander's interrogatories by producing over 11,000 documents. As Riches to Rags notes, pursuant to OCGA § 9-11-33 (c), a party may opt to produce business records in response to interrogatories. However, this Code section applies only where "the answer to an interrogatory may be derived or ascertained from the business records."[5] Here, McAlexander asserts that it was unable to ascertain the answers to its questions from the documents. Given the fact that the court-appointed auditor also was unable to ferret out the requisite information from the boxes of documents Riches to Rags provided, the trial court was authorized to conclude that Riches to Rags did not provide full answers to the interrogatories McAlexander propounded.[6]

Riches to Rags suggests that it is being penalized for being "a small, unsophisticated company which does not use computer systems for accounting [and] relies on its invoices and related documents to track its sales orders." However, even small, unsophisticated companies must timely respond to discovery requests. Moreover, given the grudging and piecemeal manner in which Riches to Rags supplied information to both McAlexander and the court-appointed auditor, the trial court was authorized to conclude that Riches to Rags was intentionally prolonging the discovery process. Indeed, as the trial court noted in its order, Atkins promised as much in his response to McAlexander's initial demand letter. Thus, under the facts of this case, we cannot say that the trial court abused its discretion in imposing sanctions.[7]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

---

[3] (Punctuation omitted.) *Roberts v. Maren Engineering Corp.*, 225 Ga. App. 110, 111 (1) (483 SE2d 141) (1997).

[4] *Santora v. American Combustion*, 225 Ga. App. 771, 772 (1) (a) (485 SE2d 34) (1997).

[5] OCGA § 9-11-33 (c).

[6] See *Gazelah v. Rome Gen. Practice*, 232 Ga. App. 343, 344-345 (2) (502 SE2d 251) (1998) (discovery sanctions may be appropriate where answer does not fully satisfy the question posed).

[7] See *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 349-351 (3) (b) (537 SE2d 397) (2000).

DECIDED MAY 17, 2001.

*Paul, Hastings, Janofsky & Walker, John G. Parker, Joseph C. Sharp*, for appellant.
*J. Christopher Simpson, Greg S. McLaughlin*, for appellee.