## A03A1387. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. HEALTH HORIZONS, INC.
### (590 SE2d 798)

BARNES, Judge.

This court granted State Farm Mutual Automobile Insurance Company's application for an interlocutory appeal of the trial court's order granting Health Horizons, Inc.'s motion for sanctions, dismissing its answer, and granting a judgment to Health Horizons on liability. The insurance company argues on appeal that the trial court abused its discretion, and further contends that the trial court erred in granting a judgment on liability because Health Horizons' complaint failed to allege fraud properly. We conclude that the trial court did not abuse its discretion in dismissing State Farm's answer and issuing a judgment against it as to liability, and therefore affirm the trial court's order.

The history of this case is long and complicated, having already made one trip to this court on an unrelated matter.[1] The only issue before us, however, is whether the trial court erred in concluding that State Farm wilfully failed to comply with its previous order granting Health Horizons' motion to compel, and thus striking the defendant's answer and granting a default judgment to the plaintiff on the issue of liability.

In August 1997, Health Horizons filed a complaint against State Farm asserting that the insurer had fraudulently denied Health Horizons' claims for reimbursement of medical services provided to State Farm's policyholders. State Farm answered and denied liability. The parties conducted extensive discovery, and the trial court eventually granted Health Horizons' second motion to compel discovery after a hearing conducted on December 20, 2001. The written order was entered on January 30, 2002, after the parties agreed to the wording. On October 10, 2002, the trial court granted Health Horizons' motion to strike State Farm's answer, finding that State Farm wilfully disregarded that portion of the January 30 order requiring it to respond to Health Horizons' "Request for Production of Documents No. 18." Specifically, the trial court had ordered State Farm to "produce copies of its documents regarding the handling of medical claims, protocols for medical reviews of State Farm policyholders, incentives [sic] in claim reductions, and reductions in claims, which it also produced in the cases of *Robinson v. State Farm* and *Foltz v. State Farm*." *Robinson* was a similar action filed in an

---

[1] In *Health Horizons v. State Farm &c. Ins. Co.*, 239 Ga. App. 440 (521 SE2d 383) (1999) (physical precedent only), we held that the registration of a foreign corporation filed with the Secretary of State related back to a previously filed complaint by that corporation in this state.

Idaho state court, and *Foltz* was a similar action filed in federal district court in Oregon. The order further provided that State Farm's attorneys should review these documents and prepare a "privilege log" identifying the documents State Farm contends do not fall into these four categories, to enable the plaintiff to challenge the omissions and the court to resolve the dispute.

While the order did not specify a time period for compliance, at the hearing a month earlier counsel for State Farm stated that 30 days should be more than enough time, although he also stated that he did not know how many documents were involved. After the plaintiff moved for sanctions on April 22, 2002, State Farm filed a brief in response arguing to the court for the first time that it had been delayed in responding because it could not find duplicate copies of all the documents from these other two cases that were not stamped "sealed."

As Health Horizons made clear during the hearing on its motion for sanctions, it was not complaining about the length of time it took for State Farm to deliver the voluminous records it produced in response to the court's order to compel production. Rather, it was complaining about the fact that State Farm declined to produce some of the documents. One of the reasons it gave for declining to produce some of these documents was that a federal court in Oregon had placed them under seal. The issue of these documents being under seal was exactly the issue that the parties argued about in their hearing on Health Horizons' motion to compel. The trial court considered this issue, and gave State Farm very specific directions about how to handle it, which was to produce copies of these documents from their own files that related to four specific issues, and if it thought that the documents did not relate to these four issues, list them in a log and the court would decide whether they were relevant or not. The parties agreed at the hearing to a protective order covering all discovery produced in this case, and then worked together for a month to draft an order that reflected the trial court's direction at the hearing.

State Farm decided not to seek an interlocutory appeal challenging the trial court's order, as it explained later at the sanctions hearing, because "a discovery order doesn't . . . get much attention in the appellate courts." Instead, State Farm employees at the corporate headquarters produced a log identifying some of these documents as not being produced because they were under seal, "Not related to Health Horizons' litigation in time," contained personal information, or related to a different case. Health Horizons moved for sanctions, and at that hearing, State Farm told the court that, at the previous hearing on the motion to compel, it had no idea what had been produced in the Oregon federal court case Health Horizons was seeking

information about, although it had received the plaintiff's request to produce seven months before that hearing. At the sanctions hearing, State Farm said it would consider the trial court's suggestion that it could have sought instruction from the other court if it were concerned about being in contempt of that court's order.

In its first post-hearing letter to the trial court, State Farm then suggested that Health Horizons could attempt to intervene in the other case, which was on appeal to the Court of Appeals for the Ninth Circuit. Two months later, in its second post-hearing letter to the trial court, State Farm's attorney told the trial court that he had been advised that the company had corresponded with the judge in the other case, asking it to reassume jurisdiction for the purposes of unsealing the record for another reason, even though it was still on appeal. If that court agreed to unseal the records, then State Farm offered to ask that the records also be unsealed for production in this case.

The trial court found that State Farm's refusal to comply with the mandates of its order to compel production was "wilful and in conscious disregard" of the court's order. It further found that

> State Farm's behavior throughout the discovery process, from its untimely production to its conscious, intentional refusal to comply with the Court's Order to Compel Production has been adverse to constitutional and statutory mandates for a speedy and efficient discovery process and undermines the power and authority of the Court.

At the sanctions hearing, the plaintiff argued that State Farm was in contempt of the trial court's order granting its motion to compel because, in its 63-page privilege list, it indicated that it need not produce a number of documents because they were under court seal, rather than because they were not relevant or otherwise did not fall within the four categories the trial court specified in its previous order. The plaintiff further argued that some of State Farm's other reasons for withholding documents were because they contained personal information, they were related to a different case, and they involved a different time frame, in defiance of the court's order granting its motion to compel.

In its order, the trial court responded to these assertions as follows:

> At the hearing, State Farm had asserted privacy concerns because many of the documents had been sealed by the court in Oregon. The Court found this argument unpersuasive. The only concern of the Plaintiffs in the Oregon cases which

required the sealing of the documents was the confidentiality of the medical records. Clearly, this Court allowed State Farm to redact the names of the patients involved before submitting copies of its documents to this Court.

The trial court further found that State Farm knew the type of documents requested since May 2001 and the specific documents requested since December 2001, almost five months before, and that its failure to produce these documents was wilful and in conscious disregard of the court's order. The trial court specifically addressed State Farm's failure to produce certain documents because they contained private information, and rejected the company's proposals for "time-consuming and uncertain resolutions to a 'problem' of its own making which was resolved by this Court in its order to compel production."

1. At some point, showing diligence without actually producing anything is an empty gesture. The trial court's job is to control its litigation, and it has broad discretion in ascertaining whether a party has made a good faith effort to comply with its orders or has wilfully failed to comply. *Riches to Rags v. McAlexander & Assoc.*, 249 Ga. App. 649, 652 (549 SE2d 474) (2001). State Farm has been represented by three of the best law firms in this state, yet presents itself as caught between the orders of two courts with no way to satisfy both. The company made no attempt to appeal this issue or protect itself in any way. Instead, at each juncture, it offered another excuse, or another avenue down which the company or the plaintiff could travel toward the end result of possibly producing the documents in the future.

> Historically it has been the policy of the Georgia appellate courts to refuse to interfere with a trial court's exercise of its discretion in absence of abuse. This policy is applicable to a trial judge's exercise of the broad discretionary powers authorized under the discovery provisions of the Civil Practice Act.

(Citations and punctuation omitted.) *Rubin v. Cindyreal, N.V.*, 171 Ga. App. 45, 46 (318 SE2d 520) (1984). See also *Cannon Air Transport Svcs. v. Stevens Aviation*, 249 Ga. App. 514, 517 (4) (548 SE2d 485) (2001); *Deep South Constr. v. Slack*, 248 Ga. App. 183, 185 (1) (546 SE2d 302) (2001); *Butler v. Biven Software*, 238 Ga. App. 525, 527 (2) (522 SE2d 1) (1999). We will affirm a trial court's finding of a wilful refusal to comply with discovery if any evidence supports it. *Potter v. American Medcare Corp.*, 225 Ga. App. 343, 346 (484 SE2d 43) (1997).

Further, while we cannot consider the trial court's order confirming that it reviewed the privilege logs at issue, because the order was filed after we granted State Farm's application for interlocutory appeal, the record otherwise establishes that the trial court did so. The logs themselves are included in the record. In its order granting sanctions, the trial court found as a fact that State Farm produced the logs, and further found that the logs included documents that fell within the four categories that the court had ordered the company to produce. Therefore, we need not remand the case for the trial court to consider the logs it has already considered.

State Farm argues that a trial court can only dismiss an answer if a defendant completely fails to respond to an order to compel, and in this case, because State Farm produced thousands of pages of documents, the trial court should be constrained to grant a lesser sanction. If that were the law, then a defendant could endlessly respond to a motion to compel by partially complying while asserting various forms of privilege or unavailability or difficulty of production in order to "stay in the game," as State Farm has done here. In wilfully defying the trial court's order, State Farm has opened itself up to the ultimate sanction of having its answer dismissed, despite the fact that it complied with the order to compel in some respects.

Neither *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436, 439 (2) (254 SE2d 825) (1979), nor *Barron v. Spanier*, 198 Ga. App. 801 (403 SE2d 88) (1991), requires a different conclusion. The cases hold that, if a defendant completely fails to respond to discovery, the plaintiff need not obtain an order compelling a response before filing a motion for sanctions, but do not otherwise limit the trial court's authority to impose sanctions when a discovery order is violated. In this case, however, the plaintiff obtained an order in response to its motion to compel, and the defendant then defied the order, subjecting it to the sanction of dismissing its answer.

2. Finally, State Farm argues that the trial court erred in granting a default judgment to Health Horizons, because its complaint does not state a fraud claim. We disagree. The elements of a fraud action are an intentional false representation by the defendant designed to induce the plaintiff to act or refrain from acting, upon which the plaintiff justifiably relies, resulting in damage to the plaintiff. *City Dodge v. Gardner*, 232 Ga. 766, 769-770, n. 1 (208 SE2d 794) (1974). The plaintiff contends that it relied on State Farm's promise to pay proper medical claims, which it never intended to do and in fact did not do, to the plaintiff's detriment. "A promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud." (Citations and punctuation omitted.) *Howard v. Hammond*, 216 Ga. App. 703, 706

(1) (455 SE2d 390) (1995). Accordingly, Health Horizons' claims are sufficient to state a fraud claim.

*Judgment affirmed. Blackburn, P. J., Ruffin, P. J., Eldridge, Mikell and Adams, JJ., concur. Andrews, P. J., dissents. Johnson, P. J., not participating.*

ANDREWS, Presiding Judge, dissenting.

Because I believe the trial court abused its discretion in striking State Farm's answer and entering default judgment against it, I must respectfully dissent.

Health Horizons' complaint against State Farm specifically alleged as follows: State Farm was an automobile insurance company which issued policies containing provisions for payment of medical expenses of its insureds incurred as a result of automobile accidents. Health Horizons accepted assignment by the insureds of the right to payment under these policies as a result of Dr. Knott's providing medical services to State Farm's insureds. When medical bills were submitted by Health Horizons to State Farm, they were frequently denied on the basis that State Farm contended that the treatments given were not necessary. In order to support its refusal to pay these claims, State Farm "entered into a fraudulent scheme with various medical professionals whereby said medical professionals furnish unfounded opinions that the treatment . . . was not necessary." As a result, Health Horizons claimed damages "in an amount equal to the sum of the claims for medical bills wrongfully denied," as well as for punitive damages under OCGA § 51-12-5.1.

State Farm answered, including as its first defense that the complaint failed to state a claim upon which relief could be granted. Discovery ensued, including Health Horizons' first interrogatories filed in October 1997. State Farm filed objections to these and sought a protective order. Health Horizons' subsequent motion to compel answers to these interrogatories was granted on April 24, 1998. Although a certificate of immediate review was granted by the trial court, no appeal was sought by State Farm. The interrogatories were then answered.

Thereafter, State Farm[2] filed its motion to dismiss contending that Health Horizons was a foreign company and had not registered in Georgia as required by OCGA §§ 14-2-1501 (a) and 14-2-1502 (a).[3] Health Horizons then obtained a certificate of immediate review and the issue of the relation back of the registration to the original com-

---

[2] State Farm's original counsel withdrew from the case on May 13, 1998. Present counsel was substituted and filed additional defenses and this motion to dismiss.

[3] In its complaint, Health Horizons, Inc. had mistakenly alleged that it was a Georgia corporation.

plaint was decided in *Health Horizons v. State Farm &c. Ins. Co.*, 239 Ga. App. 440 (521 SE2d 383) (1999). The remittitur was received by the trial court and this action was reinstated on March 6, 2000.[4]

Shortly thereafter, due to a serious illness in the family of Health Horizons' counsel, the case was continued at his request until early 2001. Upon resumption of the case, the case was again stayed by order of April 6, 2001, pending an agreed-upon mediation by the parties in an effort to resolve the matter.

That mediation having failed, discovery resumed. Health Horizons' request for production, served on May 23, 2001, contained Paragraph 18, which is at the heart of this appeal. That paragraph requested production of

> [t]hose documents produced in *Robinson v. State Farm*, [Case No. OC 94-98099D, Fourth Judicial District of the State of Idaho, and] *Foltz v. State Farm &c. Ins. Co.*, [331 F3d 1122 (9th Cir. 2003)],[5] . . . regarding handling of medical claims, protocols for medical reviews of State Farm policyholders, incentives in claims' reductions, and reductions in claims.

On July 2, 2001, State Farm filed its motion for protective order regarding the request to produce these documents and the depositions to which these documents related. State Farm objected to Paragraph 18 on the grounds that it was overly broad, burdensome, and oppressive, and that the material requested was not relevant nor material to the issues between State Farm and Health Horizons, nor reasonably calculated to lead to discovery of admissible evidence. Further, State Farm objected that "most all the documents sought from the *Foltz* case are under seal and cannot be voluntarily produced by State Farm. Additionally, most all of the documents sought from the *Robinson* . . . cases are either subject to the protective order or are under seal."

In response, Health Horizons filed its second motion to compel discovery on August 1, 2001. The trial court then continued the hear-

---

[4] On August 28, 1998, this matter was reassigned to the present judge, who granted the pending motion to dismiss on November 10, 1998, resulting in the appeal in *Health Horizons, supra.*

[5] Both of these cases were suits brought by State Farm's own *insureds* against it. Foltz claimed that State Farm conspired with its medical review agency, California Institute of Medical Research & Technology, to fraudulently deny her claim. Both companies were named as defendants. *Foltz, supra.* The opinion in *Foltz, supra,* is the result of other State Farm insureds seeking discovery from that case in their own claims against State Farm following Foltz's confidential settlement of her claims. Robinson sued only State Farm, alleging breach of her policy, intentional infliction of emotional distress, and seeking compensatory and punitive damages. *Robinson, supra.*

ing on both motions until December 2001, to give the parties an opportunity to resolve their discovery issues. As reflected in the hearing conducted on these motions on December 20, 2001, the parties were able to resolve a number of these matters. Among the matters agreed to was the entry of a consent protective order applicable to documents State Farm deemed confidential. As to those documents sought by Request 18, supra, however, the parties were unable to resolve their disputes. During the hearing, the trial court announced that

> I'm not doing anything to break the seals in those courts. What I am saying to State Farm is that you have to get your duplicate copies of whatever is under seal in these two cases. I will allow the State Farm attorneys to go through them and to determine what you think is relevant and releasable. If you have a portion, or however large the group's going to be, of documents that you claim are not relevant to be released to them pursuant to these categories and pursuant to this litigation, then you're going to have to . . . give me . . . the equivalent of a privileged log of what you claim, or I guess a relevancy log — . . . of what you claim . . . you don't need to release, and why, or, well, what you claim the non-relevancy is, and then I guess that means I have to do an in-camera inspection.

Following that hearing, State Farm began reviewing those documents produced in the *Foltz/Robinson* cases, a total of over 41,000 documents. On January 30, 2002, after counsel for State Farm and Health Horizons agreed regarding its wording, the trial court entered its written order on Health Horizons' second motion to compel. Regarding Health Horizons' Request for Production of Documents No. 18, Paragraph 5 of that order directed State Farm to

> produce copies of its documents regarding the handling of medical claims, protocols for medical reviews of State Farm policyholders, incentatives [sic] in claims reductions, and reductions in claims, which it also produced in the cases of *Robinson v. State Farm* and *Foltz v. State Farm*. [State Farm's] attorneys shall review all documents State Farm produced in the aforesaid cases and prepare a privilege log identifying those documents which [State Farm] contends are not relevant to the categories set out above, so as to enable counsel for [Health Horizons] to challenge or dispute [State Farm's] contentions. Any such dispute will be

resolved by the Court, following an *in camera* inspection of the disputed documents.

No time limit within which this was required to be done was stated in the order. Health Horizons does not dispute that, following this order, State Farm produced 13,000 pages of documents, although counsel for Health Horizons was apparently unaware that some of these documents were in his office when he drafted and filed, on April 22, 2002, the motion for sanctions against State Farm pursuant to OCGA § 9-11-37 (b) (2) (C). Although not addressed by the majority, that motion was premised solely upon Health Horizons' contention that State Farm had refused to produce *any* of the *Foltz/Robinson* documents in response to the trial court's January 30, 2002 order and its claim that such refusal was "unreasonable and obviously due to an intention to delay and frustrate this Court's Order that State Farm has not produced these documents during the months that have elapsed since December 20, 2001 and since January 30, 2002." In fact, the first box of documents resulting from the review of *Foltz/Robinson* documents had been forwarded to Health Horizons' counsel on March 25, 2002, and three more boxes were sent on April 8, 2002. State Farm was also, at that time, preparing the privilege/relevancy logs referenced by the January 30, 2002 order. The log for the *Foltz* case is fifty-five pages and the one for the *Robinson* case is seven pages.

In addition to the 13,000 documents received before the filing of the motion to strike, an additional 1,000 documents were sent to Health Horizons' attorney on May 13, 2002.[6] On May 16, the *Foltz/Robinson* logs were provided to Health Horizons' counsel and submitted to the court for in camera review.

The hearing on Health Horizons' motion for sanctions was held on June 18, 2002, and taken under advisement by the trial court. The order granting this motion was entered on October 10, 2002, and this appeal ensued.

The October 10 order states, inter alia, that State Farm's failure to "provide complete responses to" Health Horizons' September 8, 1998 second interrogatories "is the subject of the present Order." These interrogatories sought information from State Farm regarding its eighth and ninth defenses that some of Health Horizons' claims were barred by the statute of limitation and some by accord and satisfaction. The only request for production included with these interrogatories was for those documents related to accord and satisfaction. As stated above, the sole premise for Health Horizons' motion

---

[6] The record contains no response by Health Horizons to the privilege/relevancy logs.

for sanctions was the failure of State Farm to produce any documents pursuant to Request for Production No. 18 as required by the January 30, 2002 order.

While acknowledging that, between March 26, 2002, and May 16, 2002, State Farm produced over 14,000 documents as well as the privilege/relevancy logs, the trial court nonetheless found that "State Farm continues to disregard the Court's Order [of January 30, 2002,] requiring all documents requested in Health Horizons' Interrogatory 18 relevant to the four categories enumerated in the Court's Order."

On December 11, 2002, following the docketing of State Farm's notice of appeal here on December 4, 2002, the trial court entered its order regarding the documents withheld from Health Horizons by State Farm during discovery, but provided on June 18, 2002, to the trial court along with the *Foltz/Robinson* privilege/relevancy logs for in camera review. That order states only that "[t]he Court considered the contents of these documents in reaching its decision of October 10, 2002, which is currently under review by the Court of Appeals." The order also directed those documents be forwarded to this Court under seal for consideration with the appeal.

1. State Farm contends, in its first enumeration, that the trial court erred in finding that State Farm had wilfully disobeyed its order compelling the production of *Foltz/Robinson* documents and that, even if correct in concluding that State Farm had not fully complied with that order, the trial court entered an unduly harsh sanction and abused its discretion by striking State Farm's answer and affirmative defenses and entering default judgment in favor of Health Horizons as to liability, leaving only the issue of damages for trial. I agree.

I recognize that trial judges have broad discretion in controlling discovery, including imposition of sanctions, and that appellate courts will not reverse a trial court's decision on such matters absent a clear abuse of discretion. *Fidelity Enterprises v. Heyman & Sizemore*, 206 Ga. App. 602, 603 (426 SE2d 177) (1992); *Addington v. Anneewakee, Inc.*, 204 Ga. App. 521, 522 (420 SE2d 60) (1992). While the Civil Practice Act authorizes a trial court to dismiss a party's pleadings as a sanction for a *complete failure* to attend his own deposition, to respond to interrogatories, or to respond to requests for production, without the opponent's filing of a motion to compel and entry of a court order (OCGA § 9-11-37 (d) (1); *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436 (254 SE2d 825) (1979); *Barron v. Spanier*, 198 Ga. App. 801 (403 SE2d 88) (1991)), there was no such complete failure here, even with regard to Request for Production No. 18.

The sole premise contained in Health Horizons' motion for the striking of State Farm's answer and entering of default judgment on liability was State Farm's claimed disobedience of the trial court's

January 30, 2002 order, which Health Horizons alleged was a total failure to comply with regard to Request for Production No. 18. OCGA § 9-11-37 (b) (2). Many of the cases dealing with entry of default as a result of disobedience of a court order regarding discovery involve a total failure to comply, not a partial failure. Compare *Amaechi v. Somsino*, 259 Ga. App. 346 (577 SE2d 48) (2003), and *City of Griffin v. Jackson*, 239 Ga. App. 374, 376-377 (1) (520 SE2d 510) (1999) (striking of pleadings and entries of default affirmed, no response to court order), with *Gen. Motors Corp. v. Conkle*, 226 Ga. App. 34, 38-46 (1) (486 SE2d 180) (1997) (physical precedent only); *Harwood v. Great American Mgmt. &c.*, 171 Ga. App. 488 (320 SE2d 269) (1984); and *Thornton v. Burson*, 151 Ga. App. 456, 457-461 (2) (260 SE2d 388) (1979) (entry of default judgments reversed, partial discovery provided).

As the trial court recognized, the harshest sanction available under OCGA § 9-11-37 (b), that of dismissal and default, is reserved for the most extreme cases and the trial court must find wilfulness as a predicate for imposing this sanction. *Schrembs v. Atlanta Classic Cars*, 261 Ga. 182 (402 SE2d 723) (1991); see *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 210 (3) (538 SE2d 441) (2000).

For a number of reasons, I believe that the trial court erred in imposing the ultimate sanction in this case. First and foremost, having provided in the January 30, 2002 order that State Farm could produce the privilege/relevancy logs regarding the *Foltz/Robinson* cases, the trial court's only action regarding these logs was its December 11, 2002 order, merely stating that the trial "Court considered the contents of these documents. . . ."

As set out above, this order was entered after State Farm had filed its notice of appeal and this case had been docketed here. The filing of the notice of appeal serves to supersede a judgment, and while it is on appeal, the trial court is without authority to modify it. OCGA § 5-6-46 (a); *Dalton American Truck Stop v. ADBE Distrib. Co.*, 146 Ga. App. 8, 11 (4) (245 SE2d 346) (1978); see also *Isaac v. State*, 237 Ga. App. 723, 726 (3) (516 SE2d 575) (1999). Therefore, the December 11, 2002 order is a nullity. *Dalton American Truck Stop*, supra.

Health Horizons argues that because the documents were watermarked with the *Foltz/Robinson* sealing/confidentiality stamp was not alone a reason for not producing them after entry of the January 30, 2002 order. A review to the *Foltz/Robinson* privilege/relevancy logs, however, shows that this sole reason is listed for withholding relatively few of the documents. Other reasons given are lack of relevance to Health Horizons' claim; the information sought is not related to the four categories in the January 30, 2002 order; the

information sought contains personal and medical information of State Farm's insureds not involved in this litigation; and other reasons.

It cannot be said, in the present context of this case, that there has been a total failure by State Farm to comply with the trial court's order, as urged in Health Horizons' motion for sanctions. *Gen. Motors Corp. v. Conkle*, supra; *Harwood v. Great American Mgmt. &c.*, supra; *Thornton v. Burson*, supra; see *Mayer v. Interstate Fire Ins. Co.*, supra at 437-438 (2); *Brunswick Mfg. Co. v. Sizemore*, 176 Ga. App. 838, 839-842 (1) (338 SE2d 288) (1985); *Danger v. Strother*, 171 Ga. App. 607, 608-609 (1), (3) (320 SE2d 613) (1984).

In considering this matter, it is important to keep in mind that, in order to be discoverable, the items or testimony sought must be "relevant to the *subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . ." (Emphasis supplied.) OCGA § 9-11-26 (b) (1). Here, the pending action is not one between an insured of State Farm and State Farm, but of a third-party service provider which claims to have been directly defrauded by State Farm.

At a minimum, I believe that the trial court's order should be reversed and this matter remanded for consideration of the logs, in light of any objections thereto by Health Horizons, which have not yet been made, and resolution of these disputes by the trial court.

2. I also believe that, as argued by State Farm, even if it had wilfully failed to comply with the trial court's order of January 30, 2002, the entry of default judgment against it as to its liability to Health Horizons was error.

As previously noted, when a party fails to comply with an order to provide discovery, the trial court has several options, including dismissal and default in the most flagrant cases where the failure to comply is wilful, in bad faith, and in conscious disregard of an order. E.g., *Motani v. Wallace Enterprises*, 251 Ga. App. 384-386 (1) (554 SE2d 539) (2001); *Harwood v. Great American Mgmt. &c.*, supra; see *Gen. Motors Corp. v. Conkle*, supra at 44 (1) (c).

On the present record, I do not believe that this showing has been made, and even if the trial court properly determined that striking of State Farm's answer was appropriate, this alone did not mandate entry of default judgment in Health Horizons' favor as to liability.

Here, throughout this litigation, Health Horizons has steadfastly disavowed any intention to pursue any claim for State Farm's bad faith failure to settle claims of its insureds, see *Southern Gen.*

*Ins. Co. v. Ross*, 227 Ga. App. 191, 195-196 (7) (489 SE2d 53) (1997),[7] instead asserting a direct claim of fraud against State Farm, as set out above on page 448.

In relevant part, OCGA § 9-11-55 (a) provides that when a case is in default, the plaintiff is entitled to judgment "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence." As the Supreme Court of Georgia and this Court have consistently held, a default operates as an admission of the well-pled facts alleged in the complaint, but not the conclusions of law contained therein:

> A judgment by default properly entered against parties sui juris operates as an admission by the defendant of the . . . definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. Conclusions of law[ ] and facts not well pleaded and forced inferences are not admitted by [the] default judgment.

(Punctuation omitted.) *Stroud v. Elias*, 247 Ga. 191, 193 (1) (275 SE2d 46) (1981). See also *ServiceMaster Co. v. Martin*, 252 Ga. App. 751, 752 (1) (556 SE2d 517) (2001); *Azarat Marketing Group v. Dept. of Admin. Affairs*, 245 Ga. App. 256, 257 (1) (b) (537 SE2d 99) (2000).

Under OCGA § 44-12-24, a personal tort action and an action for fraud are nonassignable as are the rights to punitive damages. *Couch v. Crane*, 142 Ga. 22 (82 SE 459) (1914), citing *Morehead v. Ayers*, 136 Ga. 488 (71 SE 798) (1911); *Hayslip v. Speed Check Co.*, 214 Ga. 479, 482 (105 SE2d 455) (1958); *Barnes v. Collins*, 205 Ga. App. 750, 751 (423 SE2d 308) (1992) (all stating action for fraud not assignable); *Southern R. Co. v. Malone Freight Lines*, 174 Ga. App. 405, 408 (1) (330 SE2d 371) (1985) (punitive damages not assignable).

In order to recover against State Farm for fraud committed against it, as opposed to fraud committed against so far unidentified State Farm insureds, Health Horizons was required to show the five elements of the tort of fraud: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5)

---

[7] Statutory penalties for bad faith failure to settle pursuant to OCGA § 33-4-6 can only be sought by the insured. Pursuant to OCGA § 44-12-24, however, "a right of action is assignable if it involves, directly or indirectly, a right of property." To the extent that a claim for bad faith failure to settle sounds in tort and involves, at least in part, a claim that the insurer's conduct exposed the insured's personal property to loss, it may be assigned. *Southern Gen. Ins. Co. v. Ross*, supra at 196. Health Horizons, however, does not, as far as apparent from the record here, contend that any such fraud claims of its insureds have been assigned to it.

damages. *Klusack v. Ward*, 234 Ga. App. 178, 179 (1) (507 SE2d 1) (1998); OCGA § 51-6-2 (a).

Examining Health Horizons' complaint alone, I do not believe it shows the definite and certain allegations and fair inferences and conclusions of fact that would support Health Horizons' assertion of fraud. See *Standridge v. Spillers*, 263 Ga. App. 401 (587 SE2d 862) (2003); *ServiceMaster Co. v. Martin*, supra.

DECIDED DECEMBER 1, 2003 — 

*Powell, Goldstein, Frazer & Murphy, Elmer A. Simpson, Jr., John C. Patton, Sutherland, Asbill & Brennan, John A. Chandler, William D. Barwick*, for appellant.

*Gregory, Christy & Maniklal, Hardy Gregory, Jr., John S. Husser*, for appellee.